UNITED STATES of America,
Plaintiff–Appellee,

v.

Willie WINTERS (93–1334); Wilhelmina
Wilson (93–1648), Defendants–
Appellants.

Nos. 93–1334, 93–1648.

United States Court of Appeals,
Sixth Circuit.

Argued April 25, 1994.

Decided Sept. 8, 1994.

Brian K. Delaney, Office of U.S. Atty., Grand Rapids, MI (argued and briefed), for U.S.

Timothy R. Newhouse, Visser & Bolhouse, Grandville, MI (argued and briefed), for Willie A. Winters, Jr.

Lawrence J. Phelan, Grand Rapids, MI (argued and briefed), for Wilhelmina D. Wilson.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

The federal statute outlawing "murder for hire" states that whoever uses the mails in interstate commerce or causes another to do so "with intent" to commit murder for hire is guilty of a federal offense. 18 U.S.C. § 1958 (the "Murder for Hire Act").

The central question in this case is whether this statute requires *intentional* use of the mails or some element of knowledge respecting the use of the mails. We find that it does not. Since we also conclude that District Judge McKeague correctly denied defendants' Rule 29 motion for judgment of acquittal and properly refused to admit certain hearsay testimony, we affirm his decision.

On October 2, 1986, Wilhelmina (Debbie) Wilson purchased a life insurance policy in the name of her estranged husband, James Wilson. She and her brother, Willie Winters, conspired to kill James Wilson and collect on this policy. After a failed murder attempt in which Willie Winters shot but only wounded James Wilson, Winters shot and killed Wilson on November 4, 1986. In early 1987 Debbie Wilson received an insurance payment of $22,790.57, ten thousand of which she conveyed to her brother for the murder. Both defendants live in Michigan where the murder took place. The only interstate activity in this case involves the insurance policy issued by American General Life and Accident Insurance Company of Nashville, Tennessee. The local agent mailed Ms. Wilson's application for this policy to the company's Nashville offices for processing. The question is whether the government can establish federal jurisdiction merely by showing that defendants caused the agent to use the mails. Defendants argue that the statute requires the government to prove that both of them knew or should have known that the agent would use the mails to procure the insurance policy.

■ Only if the language of the statute is unclear do we look beyond the statutory language to the intent of the legislature. *United States v. Johnson,* 855 F.2d 299, 305

(6th Cir.1988). The meaning of the Murder for Hire Act is plain:

> Whoever ... uses or causes another ... to use the mail ... in interstate ... commerce, *with intent* that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be ... imprisoned ... and if death results, shall be subject to imprisonment for any term of years or for life....

18 U.S.C. § 1958(a) (emphasis added). "Whoever ... uses or causes another ... to use the mail" does not include a separate intent element. The clause simply establishes that use of the mails will trigger federal jurisdiction. This conclusion is supported by the fact that Congress did include an element of intent elsewhere in the statute—a defendant must act "with intent" to murder. "With intent" clearly modifies only what comes after it, namely that murder be committed; it cannot be read to modify the preceding clause—the interstate activity. Accordingly, we hold that there is no intent requirement with respect to the use of the mails and that this element of the crime is jurisdictional in nature.[1] *United States v. Edelman,* 873 F.2d 791, 794–95 (5th Cir.1989) ("government need not establish that [defendant] intended that the mail be used or that he even knew the mail was used"); *see also United States v. Razo–Leora,* 961 F.2d 1140 (5th Cir.1992) (following *Edelman*).

This Circuit has maintained a contrary interpretation of similar language contained in 18 U.S.C. § 1952 (the "Travel Act").[2] *United States v. Prince,* 529 F.2d 1108, 1111–12 (6th Cir.) ("there is a requirement of a separate intent related to the use of interstate facilities"), *cert. denied,* 429 U.S. 838, 97

---

1. "The significance of labeling a statutory requirement as 'jurisdictional' is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." *U.S. v. Feola,* 420 U.S. 671, 676–77 n. 9, 95 S.Ct. 1255, 1260 n. 9, 43 L.Ed.2d 541 (1975).

2. Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, *with intent to—*
   (1) distribute the proceeds of any unlawful activity; or
   (2) commit any crime of violence to further any unlawful activity; or
   (3) otherwise promote, manage, establish, carry on, or facilitate ... any unlawful activity....
   18 U.S.C. § 1952(a) (emphasis added).

S.Ct. 108, 50 L.Ed.2d 105 (1976). Notwithstanding the historical connection between these two statutes—the Murder for Hire Act was originally a subset of the Travel Act—we decline to extend our interpretation of the Travel Act to this context. All other Circuits that have considered the question have determined that the Travel Act's interstate requirement is purely jurisdictional and carries with it no scienter requirement. *See United States v. Gallo,* 763 F.2d 1504, 1521 n. 25 (6th Cir.1985) (citing cases from Second, Fourth, Fifth, Seventh, Eighth, Ninth and Tenth Circuits), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986). In addition, although *Prince* has not been explicitly overruled, its reasoning is questionable in view of recent Supreme Court and Sixth Circuit precedent. *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984) (knowledge not necessary for jurisdiction under federal false statement statute); *United States v. Betancourt,* 838 F.2d 168, 174 (6th Cir.) (*Prince* rule "weakened" and "significantly relaxed"), *cert. denied,* 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988). As the district court predicted, we are unwilling to extend our interpretation of the Travel Act to another, albeit closely related, statute.

This broad interpretation of the requirements for federal jurisdiction will allow federal prosecutors to bring what are essentially state murder cases into federal court. Traditional principles of federalism and "states rights" are on the wane. Rightly or wrongly, Congress has decided to give prosecutors discretion regarding when and whether to use federal institutions to investigate and prosecute these cases when an interstate nexus, no matter how slight, is present. Although there are many policy reasons for narrowly interpreting statutes that federalize criminal activities which have traditionally been the province of state law, it is clear that Congress may federalize crimes that have an interstate nexus without requiring an additional element of intent. Congress has done so here.

The holding above effectively disposes of defendants' challenges to the jury instructions and the sufficiency of the evidence. The district court instructed the jury that it must find "that defendants used or caused to be used the interstate facility and that one of the reasons for using the interstate facility was to promote, advance, manage, carry on or facilitate" murder for hire. The court rejected defendants' requested instruction requiring that the jury find knowledge or intent with respect to the insurance agent's use of the mails. Because we hold that the statute does not require knowledge as to the interstate nexus the jury instructions were correct.

■ The district court's denial of defendants' Rule 29 motion for acquittal was also proper. The record indicates that "any rational trier of fact" could find beyond a reasonable doubt that both defendants caused the mails to be used in connection with the murder and intentionally committed murder for hire. *United States v. Kottmyer,* 961 F.2d 569, 573 (6th Cir.1992). Substantial evidence also supports the jury's finding that defendants conspired to commit these acts. Defendants' joint decision to purchase the policy "caused" the insurance agent to use the mails. They split the insurance proceeds and defendant Winters was caught with the murder weapon. In addition, several witnesses testified about conversations between the defendants in which they discussed procuring life insurance and murdering the victim. This evidence is sufficient to uphold the convictions in this case.

■ Defendants also challenge the district court's refusal to admit certain hearsay evidence. They claim that the court should have permitted them to introduce statements made by the victim after the initial shooting in which he named a number of persons other than defendants as his likely assailants. These statements are essentially James Wilson's speculation in response to questions by the police as to who might want to hurt him. Defendants contend that the statements were admissible as excited utterances under Fed.R.Evid. 803(2), that the statements were inherently reliable under Fed.R.Evid. 804(b)(5) and that the purpose of the hearsay rule—to ensure confrontation by the accused—would not be served by excluding this testimony. None of these arguments is persuasive.

The "excited utterance" rule requires that the speaker be "under the sway of" a "startling event" and that the statement be made

before there is an opportunity "to contrive or misrepresent." *Haggins v. Warden, Ft. Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984). James Wilson's statements were made two days after he was shot and we have no reason to doubt the district court's finding that they "were the product of conscious reflection" and not made under the stress and excitement caused by the shooting. The district court also found that Wilson's statements carried no indicia of reliability. The fact that Wilson changed his story on more than one occasion supports this finding and defendants present no evidence that it was made in error. Finally, we reject defendants' contention that the main purpose of the hearsay rule is to ensure that criminal defendants have the opportunity to confront their accusers. Regardless of whether it is the prosecution or the defense that seeks to challenge a witness, the general purpose of the rule is to ensure the reliability of evidence and the "opportunity for the adversary to cross-examine the absent declarant." *United States v. Hathaway,* 798 F.2d 902, 905 (6th Cir. 1986) (citing *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974). The district court's decision to exclude the statements serves this purpose.

For the reasons stated we find no error in the proceedings below and AFFIRM the decision of the district court.