**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES ROBERT DUKE,

      Defendant-Appellant.

No. 99-8068
(D.C. No. 99-CR-20-B)
(District of Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, Circuit Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

---

In the first count of a six-count indictment filed in the United States District Court for the District of Wyoming on January 28, 1999, James Robert Duke ("Duke") and his brother, Patrick Michael Duke, were charged with conspiring from October 1, 1998 to January 8, 1999, with each other, and others, to travel in interstate commerce and to use facilities in interstate commerce with an intent that murders be committed in violation of the laws of the State of Wyoming, to wit, the murders of James Larry Duke and Roberta

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

uth Duke, their parents, as consideration for a promise and agreement to pay things of a pecuniary value, in violation of 18 U.S.C. § 1958.[1]  As a part of Count 1, the government set forth six "Overt Acts."   Counts 2 through 6 charged Duke with using on different dates interstate facilities in connection with the proposed murders of James Larry Duke and Roberta Ruth Duke, in violation of 18 U.S.C. § 1958 and charged Patrick Michael Duke with aiding and abetting in violation of 18 U.S.C. § 2.  We are here concerned with Duke, only.

On February 8, 1999, Duke was arraigned and pled not guilty to all six counts.  On May 6, 1999, Duke, his attorney[2], and John Green, an Assistant United States Attorney, signed a nine-page plea agreement, wherein Duke agreed, *inter alia,* to plead guilty to the first count in the indictment, conspiracy, and the government agreed, *inter alia,* to dismiss the remaining five counts.  On May 14, 1999, Duke appeared in District Court

---

[1]18 U.S.C. § 1958 reads as follows:
**Use of interstate commerce facilities in the commission of murder-for-hire**
(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both (emphasis added).

[2]Duke was represented in the district court by the Public Defender's office, and the same attorney who represented him in the district court represents him in this appeal.

and pursuant to the plea agreement pled guilty to Count 1. After a pre-sentence report was completed and filed with the court and copies given counsel, a sentencing hearing was held on August 2, 1999. At the conclusion of the hearing the district court sentenced Duke to 120 months imprisonment, three years of supervised release, a $3,000.00 fine and a $100.00 special assessment. At this hearing, the government, in line with the plea agreement, dismissed Counts 2 through 6. Notice of appeal was timely filed.

In this court, counsel raises three grounds for reversal: (1) Duke's plea of guilty was neither voluntary nor informed and was taken in violation of Fed. R. Crim. P. 11; (2) Duke's base offense level was improperly enhanced pursuant to United States Sentencing Guideline (U.S.S.G.) §1B1.2(d); and (3) imposition of the statutory maximum penalty (10 years or 120 months) improperly denied Duke the "credit" he should have received for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. We are not persuaded and therefore affirm.

Counsel's initial argument is that Duke's plea of guilty was involuntary and uninformed and asks that we vacate the sentence imposed and remand the case to the district court with directions that Duke be rearraigned, at which time he could renew his plea of guilty or plead not guilty and be tried by the court or by a jury.[3] In support of his claim that Duke's plea of guilty was involuntary and uninformed counsel argues two

---

[3]Duke did not file in the district court a motion to withdraw his plea of guilty, and the question of whether Duke's plea of guilty was involuntary and uninformed was never presented to the district court.

matters: (1) the district court in accepting Duke's plea of guilty pursuant to a plea agreement signed by Duke, his attorney, and an Assistant United States Attorney failed to advise Duke that he would be sentenced pursuant to the United States Sentencing Guidelines; and (2) the district court failed to adequately explain the crime to which Duke would plead guilty. It is agreed by the parties in this court that the district court in accepting Duke's guilty plea made no mention of the Sentencing Guidelines. However, Fed R. Crim. P. 11(h) provides that "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The government argues that under the circumstances of this case the failure of the district court to advise Duke that the Sentencing Guidelines applied to his case is only harmless error, whereas counsel for Duke contends the district court's failure to so advise is non-harmless error. Under the circumstances we believe the omission was harmless error.

Counsel makes no claim that Duke was of the view that the Sentencing Guidelines somehow did not apply to his case. It would be difficult to make such a claim since Duke, and his attorney, in the plea agreement recognized in paragraph 9 thereof that the judge was not himself a party to the agreement and that he was "free to impose whatever sentence he determines to be justified within the frame-work established by the Federal Sentencing Guidelines and other applicable federal law." And the Sentencing Guidelines are mentioned several times elsewhere in the plea agreement. So, should we vacate Duke's sentence and remand to the district court with directions that before accepting any

plea of guilty it specifically advise Duke that the Sentencing Guidelines applied to his case, it would only be advising Duke of something he already knew, as evidenced by his signature, and that of his attorney to the plea agreement. Such, to us, indicates "harmless error."[4] In this connection, in *United States v. Wright,* 930 F.2d 808 (10th Cir. 1991) we said: "We have construed this language [Rule 11(h)] as requiring the defendant show that knowledge of the omission or variance from Rule 11 'would have changed his decision to plead guilty.' " *Id.* at 810, *citing United States v. Gomez-Cuevas,* 917 F.2d 1521, 1527 (10th Cir. 1990).

Further, we believe the district court adequately informed Duke as to the elements of the conspiracy count, to which Duke pleaded guilty. The judge read more or less verbatim Count 1 to Duke and otherwise adequately informed him of the elements of the crime charged, whereupon Duke, in response to query, said he was pleading guilty "because I am guilty, sir."

Counsel next asserts that the district court erred in enhancing Duke's offense level by two under U.S.S.G. § 1B1.2(d). That subsection reads as follows:

> (d) A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.[5]

---

[4]We do not read *United States v. Gigot,* 147 F.3d 1193 (10th Cir. 1998), cited by the appellant, as dictating a reversal.

[5]Advisory comment 4 to this section states:
     Subsection (d) provides that a conviction on a conspiracy count charging

Counsel for Duke argues that Count 1 in the indictment only charges one conspiracy, whereas the government contends that Count 1 charges two conspiracies, one to use interstate facilities with an intent to murder Duke's father, and another to use interstate facilities with an intent to kill Duke's mother. We conclude that Count 1 alleges two conspiracies, and not one.

Count 1 reads as follows:

### Count One

From on or about October 1, 1998, through and including January 8, 1999, in the District of Wyoming and elsewhere, Defendants James Robert "Bob" Duke and Patrick Michael "Mike" Duke, did willfully and knowingly combine, conspire, confederate and agree together, with each other and with others known and yet unknown to the Grand Jury, to travel in and cause another to travel in interstate commerce, and to use and cause another to use facilities in interstate, with intent that murders be committed in violation of the laws of the State of Wyoming, to wit, the murder of James Larry Duke and Roberta Ruth Duke, as consideration for a promise and agreement to pay things of pecuniary value.

Counsel in our view reads 18 U.S.C. § 1958 too narrowly. The mere use of

---

conspiracy to commit more than one offense is treated as if the defendant had been convicted of a separate conspiracy count for each offense that he conspired to commit. For example, where a conviction on a single count of conspiracy establishes that the defendant conspired to commit three robberies, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery.

interstate facilities is not, in and of itself, a federal crime, of course.[6] It is the use with the intent to affect, in our case, two murders in Wyoming, namely, the murder of Duke's father and mother. Such in our view brings the present case within the purview of U.S.S.G. § 1B1.2(d). In this regard, see *United States v. Johnson,* 962 F.2d 1308 (8th Cir. 1992). This particular matter was raised in the district court at sentencing, and we agree with the district court's disposition of the matter.

Counsel's final argument on appeal is that Duke was denied "credit" for his acceptance of responsibility. In this regard, the government in the plea agreement promised to recommend to the district court that Duke's offense level be reduced by three levels because of his acceptance of responsibility. The government kept that promise when Duke's offense level was reduced from 34 to 31 because of his acceptance of responsibility. With an offense level of 31, and a criminal history of Category I, Duke's sentencing guideline range was from 108 to 135 months imprisonment. If Duke's base offense level had not been so reduced, the guideline range would have been 151 to 188 months imprisonment. In any event, the district court sentenced Duke to imprisonment for 120 months, which was the statutory maximum under 18 U.S.C. § 1958. *See* U.S.S.G. § 5G1.1(c). Incidentally, Duke was advised at the hearing on Duke's change of plea that the statutory maximum was 120 months imprisonment and such was also specifically

---

[6]The gravamen of §1958 is not the mere use of interstate facilities, it is such use coupled with the intent that a murder-for-hire be committed. *U.S. v. Winters,* 33 F.3d 720 (6th Cir. 1994); *U.S. v. Razo-Leora*, 961 F.2d 1140 (5th Cir. 1992).

mentioned in the plea agreement.  The government kept its promise in this regard.[7]

Judgment affirmed.

Entered for the court.

Robert H. McWilliams
Senior Circuit Judge

---

[7]This particular issue was never raised in the district court.  On appeal, the government argues that a sentence within the guideline range is not reviewable, citing *United States v. Garcia,* 919 F.2d 1478 (10th Cir. 1990).  Be that as it may, we find no error in this regard.