**Stefano BERTOLDO, Petitioner**

**v.**

**UNITED STATES of America, Respondent**

**No. CIV. A. 00–30134–MAP.**

United States District Court, D. Massachusetts.

April 25, 2001.

Stefano Bertoldo, FCI Otisville, Otisville, NY, Pro se.

Andrew Levchuk, United States Attorney's Office, Springfield, MA, for United States of America, Respondents.

*MEMORANDUM REGARDING PETITIONER'S MOTION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2255* (Docket No. 01)

PONSOR, District Judge.

## I. *INTRODUCTION*

Petitioner, Stefano Bertoldo, was convicted and received a 230–month sentence after pleading guilty to twenty-six charges, including RICO, murder-for-hire, narcotics, and auto theft violations. In this petition for writ of habeas corpus, Bertoldo first claims that he was denied effective assistance of counsel and, second, that this court lacked jurisdiction over Counts 33, 34, and 37 of the indictment. Petitioner's motion will be denied: his counsel was

effective and this court properly exercised jurisdiction over the disputed counts.

## II. *BACKGROUND*

A federal grand jury indicted Bertoldo and twelve other individuals for various crimes arising out of their involvement in the Connecticut and Massachusetts chapters of the Diablos Motorcycle Club (hereinafter the "Diablos"). Bertoldo, president of the Connecticut chapter of the Diablos, was charged with a total of 26 offenses. Counts 1 and 2 charged Bertoldo with RICO conspiracy and racketeering under 18· U.S.C. §§ 1962(c) and (d). Count 3 charged him with use of interstate commerce facilities in the attempted commission of a murder for hire under 18 U.S.C. § 1958. Counts 4 and 5, and 11 through 27, charged him with possession and transportation of stolen motor vehicles in interstate commerce under 18 U.S.C. §§ 2312 and 2313. Counts 33 and 34 charged him with conspiracy to possess and distribute cocaine under 21 U.S.C. §§ 841(a) and 846. Count 37 charged him with carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c). Finally, Count 38 charged Bertoldo with transporting a firearm having previously been convicted of a felony, under 18 U.S.C. § 922(g)(1).

On September 24, 1998, Bertoldo appeared before this court and pleaded guilty to each of the above counts. During the plea colloquy, Bertoldo was informed that he had a right to a speedy trial, to confront and cross-examine witnesses against him as well as offer witnesses on his own behalf, to be represented by counsel, to testify on his own behalf or remain silent, and to require the Government to prove its case against him beyond a reasonable doubt. He said that he understood those rights and was willing to give them up in order to plead guilty.

Bertoldo testified that he had had an opportunity to discuss with counsel the charges and any defenses he might have. He was advised of the possible maximum sentence provided for each of the offenses and understood that he faced extensive jail time—as much as two life sentences plus 150 years. Bertoldo indicated that his plea was free and voluntary. He confirmed that he had not been threatened into pleading guilty, that no one had promised that he would receive a lenient sentence in exchange for his plea, and that this court would make the final decision regarding the proper sentence to be imposed. Bertoldo stated that he had reviewed the indictment with his counsel and that he was pleading guilty to each of the counts because he did, in fact, do the acts charged. Finally, Bertoldo understood that he waived the right to appeal any legal sentence imposed by this court.

Bertoldo knew that his sentence would include imprisonment. He had an opportunity to discuss these issues with his attorney before the plea proceedings and was "most definitely" satisfied with the representation he received. *See* September 24, 1998 Plea Transcript at 16. His attorney stated that Bertoldo was not pleading guilty due to any illegally obtained evidence and that no drugs, medication or emotional factors were impeding Bertoldo's judgment at the hearing. Defense counsel had not told Bertoldo what sentence he would receive and could think of no reason why Bertoldo's guilty plea should not be accepted.

As noted, Bertoldo pled guilty to each of the 26 counts. On November 19, 1999, Bertoldo was sentenced to 230 months' imprisonment to be followed by five years of supervised release, and restitution in the amount of $87,640.33.

On August 3, 2000, Bertoldo filed this motion, attacking the propriety of his guilty plea on three grounds. First, he claims that Count 3—use of interstate commerce in the attempted commission of a murder for hire under 18 U.S.C. § 1958—lacked proper legal foundation and that his guilty plea to this count resulted from ineffective assistance of counsel. Second, Bertoldo alleges that this court lacked jurisdiction over Count 33 and its related Count 34. These counts charged petitioner with conspiracy and possession with intent to distribute cocaine under 21 U.S.C. §§ 846 and 841(a)(1), respectively. Third, Bertoldo claims that this court lacked jurisdiction over Count 37, which charged him with carrying a firearm during a drug trafficking offense under 18 U.S.C. § 924(c).

## III. *DISCUSSION*

### A. *Ineffective Assistance of Counsel*

Bertoldo argues that counsel should have raised a jurisdictional defense against Count 3, the murder for hire charge. Bertoldo contends that this court never had jurisdiction over this charge, because he drove from Connecticut into Massachusetts to complete a drug transaction, not to pursue the murder for hire scheme. Because counsel failed to raise this defense, Bertoldo claims that he received ineffective assistance of counsel. In fact, however, this court did have jurisdiction, and counsel's failure to pursue this meritless claim did not amount to ineffective assistance.

Challenges to guilty pleas based on ineffective assistance of counsel are evaluated under the familiar two-pronged cause and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). When a defendant challenges counsel's effectiveness

during plea proceedings, the court must ask: (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases, and (2) whether the defendant suffered "prejudice." *See Strickland*, 466 U.S. at 687–691, 104 S.Ct. 2052. Prejudice, in this context, means "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Here, Bertoldo can satisfy neither prong of this test.

■ As for the first prong of the *Strickland* test, counsel provided sound legal advice that was well within the range of competence demanded of criminal defense attorneys. The propriety of counsel's advice is best demonstrated by looking at the weakness of the jurisdictional defense. Bertoldo argues that he did not intend to commit a murder for hire when he traveled across interstate lines and, as a result, this court did not have jurisdiction over the crime. Bertoldo, however, misconstrues the relationship between the intent element and the jurisdictional element of 18 U.S.C. § 1958. The intent element of § 1958 relates to murder; it does not relate to interstate activity. *See, U.S. v. Winters*, 33 F.3d 720, 721 (6th Cir.1994). The interstate travel merely triggers federal jurisdiction. A defendant need not intend to travel across state lines to commit a murder for hire; instead, a defendant need only intend to commit a murder for hire and, in doing so, travel across state lines.

As the *Winters* court pointed out, "[t]he significance of labeling a statutory requirement as 'jurisdictional' is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." *Id.* at 721 (internal quotations omitted). Here, Bertoldo's claim that the murder for hire was not on his mind when he drove from Connecticut to Massachusetts is of no jurisdictional significance.[1] Counsel provided sound representation in deciding not to raise this claim.

Bertoldo's petition obliquely suggests that the government's informant induced him to violate § 1958. In particular, Bertoldo states that the informant drove him from Massachusetts to Connecticut and claims that the informant first mentioned the murder for hire scheme. To the extent that Bertoldo argues that he was entrapped into committing the crime, the argument fails.

■ To prevail on an entrapment defense, appellant must show that the Government induced him to commit the crime and that he was not predisposed to engage in the criminal conduct. *See e.g. Mathews v. United States*, 485 U.S. 58, 62–63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Sorrells v. U.S.*, 287 U.S. 435, 441–42, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The burden is on a defendant initially to demonstrate his unreadiness to commit the crime with which

---

1. To the extent that Bertoldo's arguments amount to a claim that he did not intend to commit a murder for hire, that claim is belied by, among other things, his guilty plea. During the plea colloquy, Bertoldo admitted that he had committed the acts alleged in count 3.

   The Court: In Count 3 you're charged with the murder-for-hire which was the sub-

ject of the videotape that we saw the other day, and I want to make sure that you're pleading guilty to that count because you did in fact commit that crime?

   The Defendant: Yes.

September 24, 1998 Plea Transcript at 11.

he is charged. *See U.S. v. Coady,* 809 F.2d 119, 122 (1st Cir.1987). That is, he must present evidence that indicates that the Government persuaded "an otherwise unwilling participant." *See U.S v. Morales–Diaz,* 925 F.2d 535, 538–39 (1st Cir. 1991).

■ Here, Bertoldo cannot meet this burden. The mere fact that an informant drove the car and first mentioned the murder for hire scheme does not mean that Bertoldo was an "otherwise unwilling participant." *Morales–Diaz,* 925 F.2d 535, 538–39 (1st Cir.1991). "An inducement consists of an opportunity plus something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *U.S. v. Gendron,* 18 F.3d 955, 961 (1st Cir.1994) (internal quotations omitted). Here, Bertoldo does not allege that he was pressured by the Government and does not provide any sort of non-criminal motive for his actions. Under the circumstances, an entrapment claim fails.

As for the second prong of the *Strickland* test, Bertoldo cannot show that but for the alleged error by defense counsel, he would have changed his plea. To begin, this second prong is largely settled by the fact that the jurisdictional argument has no legal merit. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. Here, plaintiff's jurisdictional argument would not have succeeded at trial and, as a result, Bertoldo cannot claim that he was prejudiced by counsel's failure to raise it.

Even if the jurisdictional claim had merit, Bertoldo still could not show prejudice.

Bertoldo was charged with 26 separate crimes and faced a possible prison sentence of several life terms plus 150 years. Under the circumstances, the ten-year maximum sentence Bertoldo could have received was a fraction of the total sentence he faced. It is doubtful that Bertoldo would have decided to continue with trial and face this staggering sentence even if the murder for hire scheme had been dismissed.

### B. *Jurisdiction of Counts 33 and 34*

Bertoldo next attacks Counts 33 and 34 of the indictment. Counts 33 and 34 allege conspiracy to posses with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count 33) and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 34). Each charge arises out of events occurring on April 4, 1996. Bertoldo first argues that the indictment is flawed because 21 U.S.C. § 841(b), rather than the statutes listed in the indictment, contains the actual offenses charged. Second, Bertoldo argues that the charges did not specify the amount of cocaine involved and, as a result, are unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Each of these claims fails.

■ First, the indictment properly charged Bertoldo under 21 U.S.C. §§ 841(a)(1) and 846. Section 841(a)(1) prohibits possession with intent to distribute a controlled substance while § 846 prohibits any conspiracy to commit crimes under that subchapter, including § 841(a)(1). Contrary to Bertoldo's claim, these statutes do represent the offenses charged. His preferred statute, § 841(b), on the other hand, does not prohibit any conduct. Instead, it provides the sentences to be imposed given the amount and type of controlled substance involved.

In any event, Count 33 does allege that "this Count involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine." Indictment, Count 33, at 66. The count further states that 21 U.S.C. § 841(b)(1)(A) applies, requiring a minimum sentence of ten years and a maximum sentence of life imprisonment. Although Count 34 does not directly address the quantity and amount of cocaine at issue, it is clear that the two counts—one for possession and the other for conspiracy—arise from the same event or transaction. "Allegations made in one count may be incorporated by reference in another count." FED. R. CRIM. P. 7(c)(1). Here, Count 34 references Count 33 both by including the same date and by alleging a violation of § 841(a)(1)—the underlying basis for the conspiracy charge alleged in Count 33.

■ Even if the counts had failed to cite the appropriate statutes, that failure would not warrant dismissal. Citation to statutes or regulations "is for the benefit of the defendant and is not intended to cause a dismissal of the indictment, but simply a means by which he can be properly informed without danger to the prosecution." FED. R. CRIM.P. 7, Advisory Committee's note to subdivision (c) at ¶ 3. As a result, even if Bertoldo's complaints do highlight errors in the indictment, which they do not, those errors are harmless and not grounds for dismissal. FED. R. CRIM. P. 7(c)(3).

■ In addition, Bertoldo's *Apprendi* claim fails. For both Counts 33 and 34,

Bertoldo was sentenced to 170 months imprisonment—well within the statutory maximum. As the First Circuit has held, "no *Apprendi* violation occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt." *U.S. v. Houle*, 237 F.3d 71, 80 (1st Cir. 2001); *U.S. v. Baltas*, 236 F.3d 27, 41 (1st Cir.2001).[2]

## C. Validity of Count 37 under U.S. v. Morrison and the Commerce Clause

■ Count 37 charged Bertoldo with carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Bertoldo argues that § 924(c) exceeds Congress' legislative power under the Commerce Clause. *See, e.g. U.S. v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000); *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In particular, Bertoldo claims that since § 924(c) does not contain a jurisdictional element, it must be held unconstitutional under *U.S. v. Morrison*. An analysis of the *Lopez* and *Morrison* decisions, as well as their progeny, makes it clear that Bertoldo is mistaken.

Under the framework set forth by the Supreme Court in *Lopez*, Congress permissibly may regulate three broad categories of activity pursuant to its authority under the Commerce Clause. First, Congress may directly regulate the use of the channels of commerce. *See Lopez*, 514

---

**2.** In *U.S. v. Duarte*, 246 F.3d 56 (1st Cir.2001) the First Circuit assumed without deciding that an *Apprendi* violation may occur where 1) an indictment does not specify the quantity of drugs, 2) the sentencing court does not submit the question of drug quantity to the jury, and 3) the defendant is sentenced to a term beyond the default statutory maximum, *Id.* at 63–64. *Duarte* is inapposite here. As

noted, the indictment did specify the quantity of drugs at issue. Count 33 charged conspiracy to possess five kilograms or more of cocaine. Count 34 sufficiently referred to count 33—and the quantity of drugs—by including the same date and charging a violation of 21 U.S.C. § 841(a)(1), the underlying basis for the conspiracy charged in Count 33.

U.S. at 558, 115 S.Ct. 1624. Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons and things in interstate commerce, even though the threat may come only from intrastate activities." *Id.* Third, Congress may regulate "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624.

In *U.S. v. Walker*, the Second Circuit examined § 924(c) in light of the Supreme Court's decision in *Lopez* and determined that the statute was a valid exercise of Congress' power under the Commerce Clause. *See* 142 F.3d 103, 110–111 (2nd Cir.); *cert. denied*, 525 U.S. 896, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998). *Walker* noted that § 924(c)(1) "makes it unlawful to use or carry a gun during or in relation to 'any crime of violence or drug trafficking crime.'" *Id.* at 111; *citing*, § 924(c)(1). Because the statute directly addresses drug trafficking crimes, the Second Circuit held that the legislative declarations of the Controlled Substances Act ("CSA") are applicable to § 924(c)(1). *See id.; see also,* 18 U.S.C. § 924(e)(2)(A)(i) ("As used in this subsection the term 'serious drug offense' means an offense under the Controlled Substances Act").

The CSA's legislative declarations are codified in 21 U.S.C. § 801 and "provide a specific, reasonable finding by Congress that local narcotics activity substantially affects interstate commerce." *Walker,* 142 F.3d at 111. As a result, legislation enacted under the CSA fits into the third category of permissible Commerce Clause regulations articulated in *Lopez.* Since the CSA's legislative declarations apply fully to § 924(c), that enactment is valid under *Lopez* as well. Simply put, § 924(c) regulates activities "that substantially affect interstate commerce." *See, Lopez,* 514 U.S. at 559, 115 S.Ct. 1624.

Bertoldo acknowledges the holding in *Walker,* but argues that the recent Supreme Court decision in *U.S. v. Morrison* calls for the opposite conclusion. The Supreme Court's decision in *Morrison,* however, does not in any way undermine the Second Circuit's conclusion that § 924(c) represents a proper exercise of Congressional power under the Commerce Clause.

In *Morrison,* the Supreme Court held that the civil remedy provision of the Violence Against Women Act, 42 U.S.C. § 13981, unconstitutionally exceeded Congress's authority under the Commerce Clause. *See Morrison,* 529 U.S. at 618, 120 S.Ct. 1740. In reaching this conclusion, the Supreme Court primarily concerned itself with the relationship between non-economic activity and the aggregated effects that activity has on interstate commerce. *Id.* at 613, 120 S.Ct. 1740 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity . . . . [T]hus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature"). The Supreme Court in *Morrison* found the "but-for" causal chain connecting the remedy provision of the act to substantial affects on interstate commerce too attenuated to pass constitutional muster. *Id.* at 617–618, 120 S.Ct. 1740.

There is no such attenuation problem here. Unlike gender-motivated crimes, narcotics trafficking regulated under the CSA is obvious economic activity. As Congress has noted, much of the traffic in controlled substances flows through interstate commerce. *See,* 18 U.S.C. § 801(3). Although local distribution and possession may, strictly speaking, be considered intrastate activity, this activity is still directly connected with interstate commerce.

*See,* 18 U.S.C. § 801; *U.S. v. Peterson,* 236 F.3d 848, 855 (7th Cir.2001) ("in enacting the CSA, Congress made specific findings and declarations ... demonstrat[ing] that intrastate narcotic activity substantially affects interstate commerce"). Thus, even if Bertoldo were to argue that the trafficking he engaged in while using a weapon were strictly local, this is the type of regulation in which the intrastate activity is economic in nature and, as a result, is a proper exercise of Congressional power under the Commerce Clause.

### IV.  CONCLUSION

For the foregoing reasons, Bertoldo's motion for a writ of habeas corpus is hereby DENIED in all respects.

A separate order will issue.