# United States Court of Appeals
## For the First Circuit

No. 06-1202

UNITED STATES,

Appellee,

v.

CASEY FISHER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Jason M. Sullivan and Law Office of Jason M. Sullivan, PLLC
on brief for appellant.
Casey Fisher, pro se, on supplemental brief for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief for
appellee.

July 13, 2007

**LYNCH**, **Circuit Judge**.  In 2004, defendant Casey Fisher was convicted by a federal jury of the use of facilities in interstate commerce in the commission of murder-for-hire, and of solicitation of a crime of violence.  Fisher had hired an undercover government agent to kill a witness in a federal case against his brother, John.  Fisher was sentenced to serve 168 months in prison.

Fisher now appeals his convictions and sentence on a number of grounds.  Assisted by counsel, Fisher argues that he is entitled to acquittal of the murder-for-hire charge because the government failed to show that the planned murder was in violation of a state or federal law, as required by the federal murder-for-hire statute, 18 U.S.C. § 1958.  Pro se, Fisher makes an additional argument that the government failed to meet its burden on the murder-for-hire charge, as well as arguments that trial errors require that we remand for a new trial and that errors at sentencing require that we vacate his sentence.  We reject all claims of error and affirm his convictions and sentence.

I.

On April 24, 2002, Alain Brousseau, a Canadian truck driver, attempted to enter the United States at Champlain, New York.  Authorities found approximately 166 kilograms of hydroponic marijuana in Brousseau's truck and arrested him.  Brousseau agreed

to cooperate with law enforcement, and later that day he performed a controlled delivery of the drugs to an auto repair shop in Lakeville, Massachusetts.

At the time, the repair shop was operated by Fisher. George Otero, a large-scale marijuana dealer from New Hampshire, paid Fisher to receive shipments of drugs at the garage, and most of the shipment delivered by Brousseau was intended for Otero. When Brousseau arrived at the garage, Fisher and his brother John helped him unload the drugs. When law enforcement agents moved in, Fisher and his brother fled into the woods and escaped.

In October 2002, John Fisher was arrested and charged in federal court in New York with marijuana conspiracy. The following year, in August 2003, Fisher met with Otero, who in the meantime had agreed to cooperate with the government. At that meeting, which was recorded, Fisher discussed the pending charges against his brother and indicated that he believed the only evidence against John was Brousseau's testimony. Fisher stated that he wanted to "get rid" of Brousseau so that there was no evidence, and he stated that he had spoken with Raymond Aucoin about "tak[ing] care" of Brousseau.

Around the same time, Fisher met with Aucoin and asked him to kill Brousseau. Fisher stated that killing Brousseau would keep him and his brother from going to prison. Fisher told Aucoin that he did not yet know Brousseau's name, but that he was trying

-3-

to find out.  Several days later, Fisher and Aucoin met again, and Fisher gave Aucoin a piece of paper with Brousseau's name on it.

After his meetings with Fisher, Aucoin discussed the proposed murder with his wife and decided that he did not want to commit it.  When Aucoin relayed this decision to Fisher, Fisher told him to "find somebody else" who would.  On September 5, 2003, Aucoin, afraid of going to prison on pending charges and feeling "in over [his] head," contacted police and reported that Fisher had asked him to kill someone.  Thereafter, Aucoin met with police and agreed to cooperate with law enforcement.  Aucoin then described for police what had happened with Fisher and gave them the piece of paper with Brousseau's name on it.

On September 10, at the direction of law enforcement officers, Aucoin met with Fisher and told him that he had found a professional hit man who would kill Brousseau.  Fisher and Aucoin discussed the hit man's price and how Fisher would come up with the money.  They also discussed whether the hit man would be able to get to Brousseau, who was at that time in jail.  This conversation was recorded.

On September 19, Massachusetts State Police Sergeant Michael Grassia, posing as the hit man, met with Fisher.  The meeting was recorded.  Grassia told Fisher that he could "take care of the problem," and Fisher responded: "That's what I want to hear

-4-

. . . ." Grassia told Fisher that he needed Fisher to put up half of his fee up-front, as a showing of good faith. Fisher stated that he was trying to get the money together, and that it might take him some time. He assured Grassia, however, that he would get the required $5000.

Fisher was arrested four days later, on September 23, 2003. He was charged with using facilities in interstate or foreign commerce with the intent that a murder be committed in violation of state or federal law, in violation of 18 U.S.C. § 1958(a), and with solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373. The particular crime of violence specified in the indictment was the murder of a cooperating federal witness. See 18 U.S.C. § 1512(a)(1)(A).[1]

On December 6, 2004, after a six-day trial, a federal jury returned a verdict of guilty as to both counts. Thereafter, Fisher filed a motion for acquittal of both counts pursuant to Federal Rule of Criminal Procedure 29. The motion raised, inter alia, two arguments concerning Fisher's murder-for-hire conviction: (1) that the murder was intended to take place in Canada and

---

[1]     Fisher also was charged with conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846. He was indicted on the marijuana count on July 23, 2003, but the indictment was sealed until such time as he was taken into custody. The marijuana count, to which Fisher eventually pled guilty, was severed from the other charges and is not at issue in this appeal.

-5-

therefore did not violate any U.S. state or federal law, and (2) that the government had failed to show that Fisher had used any facility in interstate commerce, as required by 18 U.S.C. § 1958(a).  On April 12, 2005, the district court denied the motion.

On December 13, 2005, Fisher was sentenced to 168 months' imprisonment, to be followed by four years of supervised release, and a special monetary assessment of $300.

## II.

Fisher's primary argument is that the district court erred in denying his Rule 29 motion for acquittal of the murder-for-hire charge because the government failed to show that Brousseau's murder would violate U.S. state or federal law.  The federal murder-for-hire statute, 18 U.S.C. § 1958(a), requires an "intent that a murder be committed in violation of the laws of any State or the United States."  Fisher argues that a murder committed in Canada does not violate U.S. state or federal law.  Within this broad argument, he also argues more narrowly that the government failed to introduce evidence as to what state or federal law would have been violated by Brousseau's murder.

We review the denial of a Rule 29 motion for acquittal de novo, taking the evidence in the light most favorable to the government.  United States v. Carucci, 364 F.3d 339, 343 (1st Cir. 2004).  This standard of review is "formidable," United States v.

O'Shea, 426 F.3d 475, 479 (1st Cir. 2005) (quoting United States v. Loder, 23 F.3d 586, 589 (1st Cir. 1994)) (internal quotation marks omitted), and we have stated that "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal," id. (alteration in original) (quoting United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000)) (internal quotation marks omitted).

Fisher does not meet his burden here. The jury explicitly found that Brousseau's murder would have violated federal law. Like the murder-for-hire charge, the charge of solicitation to commit a crime of violence was based on the plan to kill Brousseau. That second count charged that Fisher "did solicit . . . [a] person . . . to engage in [a federal crime of violence], that is, to kill a cooperating federal witness, in violation of 18 U.S.C. § 1512(a)(1)(A)." The indictment was read to the jury, and the jury was instructed that the specific crime of violence in question was the killing of a cooperating federal witness. In finding Fisher guilty on the solicitation count, the jury necessarily found that Fisher intended that another person kill Brousseau in violation of federal law, specifically 18 U.S.C. § 1512(a)(1)(A). Subsection (h) of § 1512 specifically provides for extraterritorial federal jurisdiction. That the murder was to have taken place in Canada is of no moment.

Moreover, there was ample evidence to support the jury's finding that Fisher intended that Brousseau be killed in violation of 18 U.S.C. § 1512. Fisher spoke to Otero about the fact that Brousseau was cooperating with law enforcement, and he talked repeatedly of his desire to have Brousseau killed so that there would be no evidence against him or his brother John.

Fisher briefly makes a related counseled argument that he could not have been convicted on the murder-for-hire charge because the jury was not asked to make a special finding as to what U.S. state or federal law would have been violated by the planned murder. We bypass the potential waiver on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Fisher did not object to the jury instructions or verdict form, so we review for plain error. Jones v. United States, 527 U.S. 373, 388 (1999); United States v. González-Vélez, 466 F.3d 27, 34-35 (1st Cir. 2006). To satisfy the plain error standard, Fisher must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Fisher has not shown plain error here, either with respect to the instructions or the verdict form. The district court read to the jury the portion of the indictment charging that

Fisher intended that the murder be committed "in violation of the laws of any state or the United States," as required by 18 U.S.C. § 1958(a), and the court instructed that the jury needed to find every element of the charged crime beyond a reasonable doubt. The jury supportably found that Brousseau's murder would have violated federal law, specifically 18 U.S.C. § 1512, which precludes Fisher from making out the fourth prong of a plain error showing. See United States v. Cormier, 468 F.3d 63, 72 (1st Cir. 2006).

                              III.

        Fisher also raises a host of claims pro se. He argues that the evidence is not sufficient to sustain his conviction on the murder-for-hire count because the government failed to prove the jurisdictional element of 18 U.S.C. § 1958, that various errors at trial entitle him to a new trial, and that errors at sentencing require that we vacate his sentence.

A.      Sufficiency Claim

        Fisher argues that the district court erred in denying his Rule 29 motion for acquittal of the murder-for-hire charge because no evidence presented at trial indicated that he used a telephone or cellular phone in interstate or foreign commerce -- as opposed to having used a facility of interstate or foreign commerce -- as charged.

        At the time of Fisher's indictment and conviction, 18 U.S.C. § 1958(a) defined as an element of the crime use of a

                             -9-

facility <u>in</u> interstate or foreign commerce, while § 1958(b) defined a facility <u>of</u> interstate or foreign commerce as including means of communication. 18 U.S.C. § 1958 (2000). Fisher argues that the use of the word "in" in § 1958(a) is significant. He urges that while the language "use of a facility <u>of</u> interstate commerce" encompasses intrastate usage of a telephone, the use of a facility <u>in</u> interstate commerce requires interstate or cross-border usage. Fisher thus argues that the government was required to prove interstate or cross-border usage, and that it failed to do so.[2]

Fisher's claim is really a claim of instructional error because it is premised on a reading of the murder-for-hire statute that differs from the instruction given to the jury.[3] At trial, the district court instructed the jury that intrastate use of a telephone or cellular phone was all that the statute required. Fisher did not object to this instruction and has not raised the issue of the instruction on appeal. At best, this instructional claim is subject to plain error review. <u>Jones</u>, 527 U.S. at 388.

---

[2] The government's statement that intrastate phone use is sufficient to sustain jurisdiction under the Commerce Clause misses the point. The question is not whether Congress could have based <u>jurisdiction</u> on intrastate use of the telephone, but rather whether it defined the <u>crime</u> so as to cover intrastate use of the telephone.

[3] As on appeal, Fisher's Rule 29 motion in the district court characterized his claim as one of evidentiary sufficiency. As we explain later, such a claim fails.

-10-

As to the legal question, this circuit has not previously determined whether the version of § 1958(a) in effect at the time of Fisher's conviction requires the government to show interstate or cross-border activity, or whether intrastate usage of a means of communication such as a telephone will suffice. The other circuits to have ruled on the issue have held that a showing of intrastate usage of a requisite facility, such as a telephone, suffices. See United States v. Perez, 414 F.3d 302, 304-05 (2d Cir. 2005); United States v. Richeson, 338 F.3d 653, 660 (7th Cir. 2003); United States v. Cope, 312 F.3d 757, 771 (6th Cir. 2002)[4]; United States v. Marek, 238 F.3d 310, 320 (5th Cir. 2001) (en banc). When Congress revised § 1958(a) in 2004 to require use of a facility of interstate or foreign commerce, it titled the provision making the alteration "Clarification of Definition." See Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 6704(1), 118 Stat. 3638, 3766. The revision thus lends support to the interpretations of the Second, Fifth, Sixth, and Seventh Circuits.

---

[4]    In United States v. Weathers, 169 F.3d 336 (6th Cir. 1999), the Sixth Circuit held that the government was required to prove that the defendant's use of the telephone implicated interstate activity. Id. at 342. In Cope, which dealt with use of the mail, however, the court seemed to disavow this holding, stating that Weathers was inapposite because it interpreted only the phrase "facility in interstate commerce." 312 F.3d at 771. The court further stated: "As a matter of statutory construction, we agree with the Fifth Circuit's analysis [in Marek]." Id.

-11-

We need not decide the question here. There was no plain error; there was not even any harm. See Cormier, 468 F.3d at 72; see also Neder v. United States, 527 U.S. 1, 9-10 (1999) (collecting Supreme Court cases applying harmless error analysis to improper jury instructions on an element of an offense). There was evidence that when Fisher was in Maine, he called an individual by the name of Norman Ouimette at home and on his cell phone in an attempt to learn Brousseau's name. Although there was no direct evidence as to where Ouimette lived or where he was at that time, there was evidence that he was "the Canadian connection" from whom Otero and Fisher got marijuana after a previous supplier had been arrested. Moreover, during his testimony, Otero referred to Ouimette and others as "the Canadians in Canada." There also was testimony by a government agent that Ouimette was a Canadian national and that he was charged in Canada and Vermont with the related drug trafficking conspiracy.[5] This evidence strongly supported the reasonable inference that Ouimette lived in Canada and was in Canada when he spoke to Fisher, and that Fisher therefore made cross-border calls to contact him. The evidence was more than sufficient to sustain Fisher's conviction.[6]

---

[5]    There was no evidence linking Ouimette to Maine, where Fisher was located at the time of the phone calls.

[6]    To the extent Fisher makes a separate claim that the indictment did not put him on notice of the charges against him, that claim is waived, see Zannino, 895 F.2d at 17, and in any event

-12-

B.        Claims of Trial Error

Fisher raises three claims of trial error, each of which he says entitles him to a new trial.

Fisher first argues that the government and the district court engaged in ex parte contact.  This argument is based on a statement by the court, with which the government apparently agreed, that one of Fisher's friends had made threats on the life of a government witness.  Fisher infers that because there is no record of the prosecutor's informing the court of these threats, the government must have engaged in ex parte contact with the court.

Fisher next argues that the district court judge improperly admitted propensity evidence, as well as evidence whose probative value was substantially outweighed by its prejudicial effect.  See Fed. R. Evid. 403; id. 404(b).  This claim relates to various recordings in which Fisher makes reference to unrelated drug trafficking activity, other criminal activity, and a murder investigation of which he was the target, and in which he uses the word "nigger."

Finally, Fisher argues that the district court failed to provide a requested jury instruction on his theory of defense.  See Mathews v. United States, 485 U.S. 58, 63 (1988).  Fisher states

is without merit.

-13-

that his theory of defense was that his initial arrangement with Aucoin did not involve payment for Brousseau's murder, but rather was conceived as an exchange of favors -- Aucoin would murder Brousseau, and later Fisher would do a comparable favor for Aucoin. Fisher argues that such an exchange of favors does not violate the federal murder-for-hire statute. <u>See</u> 18 U.S.C. § 1958(b)(1); <u>United States</u> v. <u>Frampton</u>, 382 F.3d 213, 219 (2d Cir. 2004).

We have reviewed all of Fisher's claims of trial error, and they are without merit. We comment very briefly. There is no evidence, only mere speculation, that the government and the district court engaged in ex parte contact, or that the district court was in any way biased against Fisher. As to the recordings admitted at trial, early in the trial, the court granted Fisher's motion in limine to exclude those portions of the recordings that referenced the unrelated drug trafficking and murder investigation. The court thus did not permit the government to play those portions of the tapes for the jury.[7] On the fifth day of trial, however, the government sought to admit the full tapes into evidence. When asked whether he objected, Fisher's counsel stated that he consented to the admission of the tapes "subject to [his] prior

---

[7] With respect to the other criminal activity -- which was related to raising money to pay Grassia and the drug trafficking related to the murder-for-hire and solicitation charges -- and the use of the word "nigger," the court did not err in allowing the government to play those portions of the tapes for the jury.

-14-

objection." There is no indication as to what counsel's "prior objection" was, and we cannot reasonably interpret the response to mean that counsel consented only to the admission of those portions of the tapes that already had been admitted into evidence.[8] Even if we were to apply plain error review, see United States v. Flemmi, 402 F.3d 79, 86 (1st Cir. 2005), however, Fisher does not prevail. The evidence against Fisher, which included a recorded conversation in which he agreed to pay Grassia to kill Brousseau, was very strong. As a result, Fisher cannot demonstrate that the admission of the recordings referencing the unrelated drug trafficking and murder investigation seriously impaired the fairness of his trial.[9] See Cormier, 468 F.3d at 72. Finally, whether or not Fisher intended to pay Aucoin with money or a favor, he agreed to pay Grassia cash to kill Brousseau.

---

[8] We also note that Fisher raised the issue of excluding portions of the tapes in a motion in limine, not in an objection, lending further support to the notion that he was not consenting only to the admission of those portions of the tapes already in evidence.

[9] Fisher cursorily states that the jury should have received a limiting instruction to "consider the evidence only for the limited purpose for which it was admitted." He seems to consider this a factor in the determination whether the supposed character evidence should have been admitted or not. We read Huddleston v. United States, 485 U.S. 681, 691-92 (1988), differently than Fisher does. To the extent Fisher makes a separate argument that the court erred in not giving such an instruction, that claim is waived. Zannino, 895 F.2d at 17. Even had it been preserved, such a claim would fail.

C.        Claims of Sentencing Error

As to the alleged errors at sentencing, Fisher first argues that the district court improperly refused to consider his sentencing memorandum, which was not timely filed.[10]  Second, Fisher argues that the district court improperly relied on the pre-sentence report, in violation of Shepard v. United States, 544 U.S. 13 (2005), to determine that he had been serving a criminal justice sentence at the time of the offenses.  Third, Fisher argues that the district court failed to rule on disputed issues as required by Federal Rule of Criminal Procedure 32.  Fourth, he asserts that the district court did not give meaningful consideration to the sentencing factors articulated in 18 U.S.C. § 3553(a), and that the district court did not adequately explain his sentence.

Fisher's claims of sentencing error fail.  The district court was not required to consider Fisher's late submission.  See Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990) ("[A] district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines.  If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.").  In any event, there was no prejudice.  The arguments contained in the sentencing memorandum had already been

_____

[10]     The court similarly did not consider the government's sentencing memorandum, which was also filed late.

-16-

made in Fisher's objections to the pre-sentence report.  As a factual matter, the district court did not simply rely on the pre-sentence report in determining that Fisher had been serving a criminal justice sentence at the time of the offenses.  Rather, it consulted a state court probation condition schedule, attached to the state court complaint and adjudication, which was provided by Fisher's counsel for the explicit purpose of determining whether or not Fisher had been serving such a sentence at the time of the offenses.  Further, in imposing its sentence, the district court implicitly resolved all disputed issues.  Cf. United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did."), cert. denied, 127 S. Ct. 928 (2007). Finally, the district court adequately explained the sentence imposed, which was itself reasonable.

Fisher's convictions and sentence are affirmed.