**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

    v.

PAUL WILLIAM DRIGGERS,
               *Defendant-Appellant.*

No. 07-30190

D.C. No.
CR-06-00173-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
November 18, 2008—Seattle, Washington

Filed March 18, 2009

Before: Alex Kozinski, Chief Judge, Betty B. Fletcher and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Chief Judge Kozinski;
Concurrence by Judge Rawlinson

## COUNSEL

Greg S. Silvey, Kuna, Idaho, for the defendant-appellant.

Alan G. Burrow, Lynne W. Lamprecht, Traci Jo Whelan and Syrena Case Hargrove, Assistant U.S. Attorneys, for the plaintiff-appellee.

## OPINION

KOZINSKI, Chief Judge:

We consider the intent requirement of 18 U.S.C. § 1958, which prohibits using interstate commerce facilities in the commission of murder-for-hire.

### Facts

Paul Driggers was convicted of violating 18 U.S.C. § 1958 by causing Matthew Robinson to travel in interstate commerce with the intent that a murder-for-hire be committed. Driggers twice asked Robinson to travel from California to Idaho to meet with him. Robinson testified that at the first meeting, in April 2006, he agreed to kill Driggers's ex-wife for $10,000. Driggers drove him past the ex-wife's house, and they discussed various murder methods. Robinson returned to California with the understanding that Driggers would send him a deposit when Driggers was ready to proceed with the plan. Driggers testified that he did not discuss murdering his ex-wife at the April meeting, and that Robinson later sug-

gested the idea in a phone conversation. In July, Driggers deposited $1,000 in Robinson's bank account. Robinson testified that Driggers asked him to return to Idaho and told him that he had a "green light" to proceed with the murder. Robinson became a police informant, and his subsequent conversations with Driggers were recorded.

In their next conversation, Driggers confirmed that he wanted Robinson to return to Idaho, but also said he wanted "to have a good long conversation" with him "before we even do anything." Robinson then flew to Idaho. After a long conversation, Driggers eventually affirmed that he wanted Robinson to proceed with the murder. Driggers was arrested.

At trial, Driggers objected to a jury instruction describing the intent element of section 1958. The challenged instruction required the government to have proven three elements: "First, the Defendant caused Matthew Robinson to travel from one state to another. Second, the Defendant intended a murder be committed . . . . And third, the Defendant promised to pay Matthew Robinson anything of pecuniary value in consideration for the murder." The instruction was wrong, Driggers argued, because it didn't require the government to have proven any connection between the travel and the intent to murder. In his proposed alternative instruction, the second element instead read: "the defendant intended that a murder be committed . . . *at the time* he caused Matthew Robinson to travel in interstate commerce" (emphasis added). The district court rejected this proposed instruction and gave the challenged instruction, reasoning that section 1958's travel element is purely "jurisdictional."

## Analysis

**[1]** Section 1958 prohibits, in relevant part, "travel[ing] in or caus[ing] another . . . to travel in interstate or foreign commerce . . . *with intent* that a murder be committed" for hire. 18 U.S.C. § 1958 (emphasis added). Accordingly, we've

described the elements of a section 1958 violation as "1) to . . . cause another to travel in interstate commerce, 2) *with the intent* that a murder be committed" for hire. *United States* v. *Ritter*, 989 F.2d 318, 321 (9th Cir. 1993) (emphasis added).

**[2]** The statute itself, and our interpretation of it in *Ritter*, make clear that the defendant must have had a murderous intent when he caused another person to travel across state lines. In other words, the causing of the travel (the actus reus) must have been done with the intent that a murder be committed (the mens rea). The instruction given by the district court didn't adequately explain this. The instruction would have allowed the jury to convict even if it found that the defendant did not form a murderous intent until after the interstate travel was completed.

Indeed, the instruction required no connection at all between the murder scheme and the travel. Suppose, for instance, that Driggers had asked Robinson to cross state lines to pick up a birthday present for his niece or to fix his grandmother's roof. If, some years later, Driggers had involved Robinson in a purely intrastate murder-for-hire scheme, the jury could still have found him guilty of using interstate commerce facilities in the commission of murder for hire under the instruction given. Asking Robinson to cross state lines to pick up a birthday present would satisfy the first element: Driggers caused Robinson to travel from one state to another. The unrelated murder-for-hire scheme, making no use whatsoever of interstate commerce facilities, would satisfy the second and third elements: Driggers intended that a murder be committed, and Driggers offered to pay Robinson to commit the murder. It would make no difference, under the instruction given by the district court, that Robinson's interstate trip had nothing to do with the murder.

The jury might well not have believed that it could convict Driggers if the interstate travel had been utterly unrelated to the murder scheme. However, there is no way to be sure of

this, and no way to know exactly what the jury believed it needed to find on this point. The instruction could have led the jury to conclude that it could convict Driggers so long as the travel somehow furthered the murder scheme, even if Driggers formed the intent to have his ex-wife murdered only after the travel had been completed. The district court itself was mistaken on this point; we must presume that the jury was as well. The instruction was therefore misleading and inadequate to guide the jury's deliberation. *United States* v. *Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000).

The Eighth and Tenth Circuits have both concluded that section 1958 requires that the defendant have the murderous intent when he travels interstate or causes the interstate travel. The Eighth Circuit in *United States* v. *Delpit* reversed two section 1958 convictions because there was no evidence that the defendants had been involved in the murder-for-hire scheme when the interstate travel occurred. 94 F.3d 1134, 1150-51 (8th Cir. 1996). "Once the interstate-commerce facility is used with the required [murderous] intent the crime is complete," so anyone who becomes involved in the murder scheme after that point does not violate section 1958. *Id.* at 1149; *see also United States* v. *McGuire*, 45 F.3d 1177, 1187 (8th Cir. 1995) (finding sufficient evidence for a conviction under section 1958 because "the jury could fairly conclude that McGuire's intent to commit the murder . . . existed at the time that he travelled"). Similarly, the Tenth Circuit in *United States* v. *McCullah* held that "the jury could reasonably infer that [the hitman] must have known about the homicidal purpose behind the trip from California to Oklahoma before he undertook the venture, and thus the conviction[ ] under [18 U.S.C. § 1958 is] sufficiently supported by the evidence." 76 F.3d 1087, 1104 (10th Cir. 1996).

**[3]** The government argues that the interstate travel requirement is purely "jurisdictional," and therefore need not be connected to the murderous intent. This argument misses the point. As *United States* v. *Feola* explained, "the significance

of labeling a statutory requirement as 'jurisdictional' is . . . merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." 420 U.S. 671, 677 n.9 (1975). In other words, a defendant can violate section 1958 without intending to cause anyone to travel across state lines. *See United States* v. *Winters*, 33 F.3d 720, 721 (6th Cir. 1994); *United States* v. *Edelman*, 873 F.2d 791, 795 (5th Cir. 1989). But the defendant must have intended that a murder be committed, and have caused the travel with this murderous intent. As one court explained this distinction, "[t]he intent element of § 1958 relates to murder; it does not relate to interstate activity. The interstate travel merely triggers federal jurisdiction. A defendant need not intend to travel across state lines to commit a murder for hire; instead, a defendant need only intend to commit a murder for hire and, in doing so, travel across state lines." *Bertoldo* v. *United States*, 145 F. Supp. 2d 111, 115 (D. Mass. 2001) (citation omitted).

**[4]** An erroneous jury instruction is subject to harmless error review. *United States* v. *Munoz*, 412 F.3d 1043, 1047 (9th Cir. 2005). Driggers argues that the instruction was a constructive amendment of the indictment, which alleged that he caused travel "with the intent that murder be committed," and so requires per se reversal. *United States* v. *Bhagat*, 436 F.3d 1140, 1145 (9th Cir. 2006). Constructive amendments occur when the prosecutor proves, or the court instructs the jury to convict on, materially different facts or substantially different crimes than those charged in the indictment. *Id.*; *United States* v. *Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984). Here, Driggers was indicted and convicted of violating 18 U.S.C. § 1958, and the facts charged in the indictment were the same as those proven at trial: Driggers, in a scheme to have his ex-wife murdered for hire, caused another to travel interstate. The jury instruction merely mis-stated an element of the crime, an error subject to harmless error review. *Neder* v. *United States*, 527 U.S. 1, 9-10 (1999).

**[5]** The error here is harmless because "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Munoz*, 412 F.3d at 1047 (internal quotation marks omitted). While the court failed to instruct the jury to find that Driggers had a murderous intent in causing the travel, overwhelming, unchallenged evidence established that Driggers intended that a murder-for-hire be committed when he caused Robinson to travel from California to Idaho in July. *See United States* v. *Salazar-Gonzales*, 458 F.3d 851, 858 (9th Cir. 2006); *United States* v. *Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir. 2000). Driggers himself testified that Robinson told him before the July trip that if Driggers could "come up with $6,000," then Robinson "could come over and do my ex-wife, which means kill her, and the [child custody] problem would be resolved." Driggers testified that he answered, "yeah, I think I can come up with that, you know, and that would be worth it, you know, if I could end my problems that way."

Driggers didn't contest that he then wired Robinson $1,000 and asked him to return to Idaho. Their last conversation before Robinson left California was recorded by police. In it, Robinson tells Driggers that he's arranged the trip, and they agree to discuss the details of the murder and locate Driggers's ex-wife once Robinson arrives.

Driggers argues that a rational jury could have concluded from his testimony and the taped conversation that he did not intend for a murder to be committed when he caused Robinson to travel in July. He testified that he paid Robinson and asked him to come to Idaho in order "to talk him out of his suggestion" to commit the murder. He chose this roundabout means of persuasion, he testified, because he "wanted to be diplomatic," so that he and Robinson would remain friends. Driggers also points to two of his remarks from the taped conversation: "before we even do anything, I want to have a good long conversation with you" and "if you decide not to go

ahead . . . you can take [your expenses] out of the money I've given you."

The evidence overwhelmingly contradicts Driggers's defense. Both comments from the taped conversation were prompted by Robinson's asking whether Driggers had the $5,000 balance owed on the murder, and Driggers's admission that he did not. Driggers's actions (paying Robinson $1,000 and arranging the trip) and the rest of the conversation belie Driggers's claim that he intended to cancel the scheme. When Robinson tells Driggers that he's "ready to do it" without further advance payment, Driggers responds "Okay. Good." And in addition to negotiating the payment, Driggers also discusses helping Robinson locate his ex-wife and preparing to take "the final steps."

**[6]** Because the evidence at trial overwhelmingly proved that Driggers intended for Robinson to kill his ex-wife when he caused Robinson to travel in July, the erroneous instruction was harmless. *See United States* v. *Cherer*, 513 F.3d 1150, 1156 (9th Cir. 2008) (where overwhelming evidence proved that defendant believed he was enticing a 14-year-old and contradicted his defense that he believed he was enticing an 18-year-old, erroneous instruction on required belief was harmless); *Gracidas-Ulibarry*, 231 F.3d at 1197 (where overwhelming evidence contradicted defense that re-entry of the United States was unintentional, erroneous instruction on required intent was harmless).

For reasons explained in the accompanying memorandum, the trial did not otherwise violate Driggers's Sixth Amendment rights.

**AFFIRMED.**

RAWLINSON, Circuit Judge, concurring:

I concur in the conclusion that the judgment of the district court should be affirmed. I write separately to emphasize that any instructional error regarding the elements of 18 U.S.C. § 1958 was, at most, technical in nature.

Section 1958 provides in pertinent part:

> "(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any state or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for no more than ten years, or both . . .

The district court instructed the jury that to find the defendant guilty

> the Government must prove each of the following elements beyond a reasonable doubt: First, the defendant caused Matthew Robinson to travel from one state to another. Second, the defendant intended a murder be committed in violation of the laws of the United States or the State of Idaho. And third, the defendant promised to pay Matthew Robinson anything of pecuniary value in consideration for the murder.

Our precedent has upheld jury instructions that track the statutory language. *See, e.g. Johnson v. United States*, 270 F.2d 721, 725 (9th Cir. 1959); *see also United States v.*

*McKittrick*, 142 F.3d 1170, 1177 (9th Cir. 1998) (applying the same principle to a regulation). In my view, there is no legally significant difference between an instruction that states the defendant caused another to travel in interstate commerce with the intent that a murder be committed and an instruction that states the defendant caused another to travel in interstate commerce and intended that a murder be committed. *See United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (discussing the "nebulous" difference between "could have influenced" and "capable of influencing"); *see also United States v. Knigge*, 832 F.2d 1100, 1109 (9th Cir. 1988), *as amended* (holding that instruction was adequate where the phrase "for the purpose of influencing conduct" was used rather than "will influence his conduct") (emphasis omitted).

I am not persuaded that the cases from the Eighth and Tenth Circuits cited by the majority compel a finding of error in the formulation of the instruction.

In *McGuire v. Mandacina*, 45 F.3d 1177, 1186 (8th Cir. 1995), the issue was framed as whether sufficient evidence supported the jury's verdict convicting the defendant "of using interstate facilities in the commission of murder-for-hire . . ." Notably, no issue of jury instruction was raised or decided. In concluding that the evidence was sufficient to support the jury's verdict, the Eighth Circuit determined that the standard was met where the evidence "establish[ed] beyond a reasonable doubt that Mandacina caused McGuire to travel in interstate commerce *for the purpose of* murdering Strada." *Id.* at 1187 (emphasis added). Applying this standard to the facts of our case supports the jury's guilty verdict because the evidence "establish[ed] beyond a reasonable doubt that [Driggers] caused [Matthew Robinson] to travel in interstate commerce for the purpose of murdering [Driggers' ex-wife]."

The Eighth Circuit case of *United States v. Delpit*, 94 F.3d 1134, 1149 (8th Cir. 1996) was also resolved in the context of a challenge to the sufficiency of the evidence, rather than

a challenge to the jury instruction addressing § 1958. *See id.* at 1148 (addressing only reasonable-doubt instruction and lack of multiple-conspiracies instruction).

In resolving defendant's sufficiency of the evidence argument, the Eighth Circuit stated: "To convict Saunders of violating § 1958(a), the government had to prove that (1) Saunders caused Delpit to travel in interstate commerce, (2) he or Delpit intended that a murder be committed in violation of Minnesota law, and (3) the murder was to be committed for hire." *Id.* at 1150 (citing *McGuire*, 45 F.3d at 1186). Far from calling into question the challenged jury instruction, the Eighth Circuit's articulation of the elements of § 1958(a) is strikingly similar to the instruction given by the district court in this case.

Finally, the Tenth Circuit in *United States v. McCullah*, 76 F.3d 1087, 1104 (10th Cir. 1996) did conclude that "[i]n light of all the evidence, the jury could reasonably infer that Mr. McCullah must have known about the homicidal purpose behind the trip from California to Oklahoma before he undertook the venture . . ." However, as with the cases in the Eighth Circuit, this conclusion was reached in the context of a sufficiency-of-the-evidence challenge rather than a challenge to a jury instruction on the elements of § 1958. Indeed, the court in no way opined on the proper phrasing of a § 1958 jury instruction.

The majority makes use of a hypothetical scenario to illustrate the perceived instructional error. *See* Majority Opinion, p. 3515. However, in reviewing the adequacy of a jury instruction, we consider the instruction as applied to the facts of the case before us, rather than to a hypothetical set of facts. *See Peterson*, 538 F.3d at 1072 (analyzing the claim of instructional error "[u]nder the facts in this case"); *see also United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir. 1986) ("The adequacy of the entire charge must be evaluated in the context of *the* trial.") (citation omitted) (emphasis added).

I am simply not persuaded that the district court's instruction regarding the elements of § 1958 was erroneous when viewed in the context of the facts of this case. Driggers did not ask Robinson to cross state lines to pick up a birthday present, to fix a roof or for any other innocuous purpose. The facts of this case reflect that Driggers asked Robinson to cross state lines to kill Driggers's wife and for no other reason. No question of purely intrastate activity was raised. The hypothetical possibility that the jury could have misapprehended the instruction does not rise to the level of cognizable error. *Cf. Leavitt v. Arave*, 383 F.3d 809, 823 (9th Cir. 2004), *as amended* (noting that although an instruction *could* have misled the jury, there was no reasonable likelihood that it did so). Nevertheless, I acknowledge that the district court's mischaracterization of the *mens rea* element as a jurisdictional component of the statute, rather than an element of the offense, may have technically constituted instructional error. *Cf. United States v. Fisher*, 494 F.3d 5, 10 (1st Cir. 2007) (noting that the government's jurisdictional argument was not germane when considering the elements of the offense). For that reason, I fully endorse the harmless error analysis articulated in the majority opinion and concur in the judgment affirming Driggers's conviction.