NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 28 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-613 |
| Plaintiff - Appellee, | D.C. No. 3:17-cr-00093-WHA-5 |
| v. | |
| BURTE GUCCI RHODES, AKA Moeshawn, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted March 7, 2025
San Francisco, California

Before: WARDLAW, PAEZ, and BEA, Circuit Judges.

Burte Gucci Rhodes appeals his conviction and sentence of mandatory life

imprisonment for murder-for-hire in violation of 18 U.S.C. § 1958, and his

conviction of conspiracy to commit murder-for-hire in violation of 18 U.S.C. §

371. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.    Rhodes first argues that the government improperly vouched for the FBI's investigation, and thereby deprived him of his right to due process.  We disagree.  Because Rhodes did not object at trial, we review for plain error.  We may reverse only if: "(1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190–91 (9th Cir. 2015) (internal quotation marks omitted).  Improper vouching typically occurs when "the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness," or when "the prosecutor indicates that information not presented to the jury supports the witness's testimony."  *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002).

Here, in its closing argument, the government argued that "the FBI did an extraordinary job of investigating" the case, and that "[t]he FBI [had] done a thorough investigation of this murder."  Even though defense counsel did not object, the district court cautioned the government, noting that the prosecutor's statements constituted "vouching for the FBI's investigation."  These statements constitute improper vouching because the government "implie[d] that the prosecutor has extra-record knowledge of" the reliability of the FBI's

2

investigation. *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993).

By so doing, the government attempted to displace the jury's role of evaluating

credibility and "ignored [its] special obligation to avoid improper suggestions and

insinuations." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992).

Assuming that the government's vouching constitutes plain error, Rhodes

nevertheless cannot demonstrate that the error affected his substantial rights or

seriously affected the fairness and integrity of the judicial proceeding. *See United

States v. Sanchez-Lopez*, 879 F.2d 541, 551–53 (9th Cir. 1989). Rhodes fails to

demonstrate that in the absence of the vouching "there is a reasonable probability

that a jury would have acquitted him." *Greer v. United States*, 593 U.S. 503, 510

(2021). At trial, Craig Marshall, a member of the criminal enterprise, described

how Mario Robinson and Rhodes planned that Rhodes would murder Trince

Thibodeaux in exchange for $5,000. Additionally, Marshall testified that he

witnessed the murder and identified Rhodes as the shooter. There were dozens of

texts and calls between Rhodes and Robinson leading up to Thibodeaux's murder,

which abruptly fell off following the murder. After the murder, Rhodes received

nearly $5,000 from Robinson and Robinson's associates. In defense, Rhodes

argued that "Craig Marshall, the Government's star witness, the one witness which

you must completely believe in order to convict" "was cooperating to save his neck

and . . . [had] every reason to lie." Given the strength of the evidence against

3                                                                          23-613

Rhodes, any error did not affect Rhodes's substantial rights; nor did it seriously call into question the integrity of the judicial proceedings.

2.      Reviewing de novo, the district court correctly instructed the jury that a conviction under 18 U.S.C. § 1958 "require[s] that at the time of the use of the interstate commerce facility, the accused had an intention to further a murder-for-hire scheme." *See United States v. Driggers*, 559 F.3d 1021, 1023 (9th Cir. 2009). The government presented evidence of Rhodes's use of interstate facilities both before and after Thibodeaux's murder—Rhodes's calls and texts with Robinson leading up to as well as following the murder and wire transfer payments to Rhodes after Thibodeaux's death.  Therefore, even if the district court erred by stating that "[t]here is no requirement that the use of the interstate commerce facility happened before the murder," the error would be harmless because the government presented evidence of the use of interstate facilities before Thibodeaux was murdered.

3.      The district court did not err in its response to the jury's question during their deliberations.  The jury asked, "Does the defendant have to had pull [sic] the trigger to be found guilty of murder for hire?"  The district court responded, "Now, the answer to your question is: No.  Under the law, all persons involved in a murder for hire scheme are guilty so long as all of those elements, the four elements, are proven beyond a reasonable doubt as to that person."  Even

23-613

given that the government's theory at trial was that Rhodes was the triggerman, the district court's instruction included "a thorough statement of the law, the accuracy of which has not been challenged," and the language did not "direct[] the verdict, constitute[] judicial fact-finding, nor exceed[] the scope of the question." *United States v. Verduzco*, 373 F.3d 1022, 1031–32 (9th Cir. 2004). Moreover, the court reminded the jury of its role to consider "all the facts in evidence in the case." *See id.* at 1031.

4.     The evidence was sufficient to sustain Rhodes's murder-for-hire conviction. We "consider the evidence presented at trial in the light most favorable to the prosecution" and determine whether "*any* rational trier of fact [could find] the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original) (internal quotations omitted).

Here, even without the substance of the communications between Robinson and Rhodes leading up to the shooting in evidence, a reasonable juror could conclude that at least one of the calls or text messages was about the plan to murder Thibodeaux. The juror could base this finding on the timing and pattern of the calls leading up to the murder and their drop-off immediately following, Marshall's testimony that he heard Robinson discussing the murder on the phone

with someone, and the evidence that Robinson used interstate facilities to send payments to Rhodes after Thibodeaux was murdered.

5.      Rhodes argues that a mandatory life without parole sentence is cruel and unusual punishment in violation of the Eighth Amendment.  This argument is foreclosed by *Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991).  *See United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir. 1991) ("Under *Harmelin*, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment.").

**AFFIRMED.**