**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50531 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-8 |
| v. | |
| TERRY CHRISTENSEN, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50570 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-1 |
| v. | |
| ANTHONY PELLICANO, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50115 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-7 |
| v. | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

MARK ARNESON,

       Defendant - Appellant.

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

RAYFORD EARL TURNER,
AKA Seal B,

       Defendant - Appellant.

No. 09-50125

D.C. No. 2:05-cr-01046-DSF-2

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

ABNER NICHERIE,

       Defendant - Appellant.

No. 09-50128

D.C. No. 2:05-cr-01046-DSF-6

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

KEVIN KACHIKIAN,

       Defendant - Appellant.

No. 09-50159

D.C. No. 2:05-cr-01046-DSF-3

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50434 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-2 |
| v. | |
| RAYFORD EARL TURNER, AKA Seal B, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50462 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-7 |
| v. | |
| MARK ARNESON, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50464 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-1 |
| v. | |
| ANTHONY PELLICANO, AKA Seal A, | |
| Defendant - Appellant. | |

| UNITED STATES OF AMERICA, | No. 10-50472 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-01046-DSF-8 |
| v. | |
| TERRY CHRISTENSEN, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted November 4, 2013
Pasadena, California

Before: FISHER and CLIFTON, Circuit Judges, and CHRISTENSEN, Chief District Judge.[**]

Defendants Terry Christensen, Anthony Pellicano, Mark Arneson, Rayford Turner, Kevin Kachikian, and Abner Nicherie appeal their criminal convictions stemming from a widespread criminal enterprise offering illegal private investigation services in Southern California.

The facts of this case have been related in detail in a concurrently filed opinion that discusses some of the issues raised on appeal and explains why some of the counts of conviction are reversed. *See United States v. Christensen*, 08-

---

[**]     The Honorable Dana L. Christensen, United States Chief District Judge for the District of Montana, sitting by designation.

50531 (9th Cir. 2015). In this memorandum disposition, we affirm as to all remaining issues.

## I.     Probable Cause to Support November 2002 Warrant

Christensen and Pellicano argue that the November 2002 warrant was invalid because the application for it did not include evidence to establish probable cause for a necessary element of a Hobbs Act violation: that Pellicano would obtain money or property from Busch by threatening her. This court has previously held that even if the magistrate judge was wrong about the Hobbs Act elements, the officers were entitled to rely on the November 2002 warrant under the good faith exception to suppression. *United States v. Pellicano*, 135 F. App'x 44 (9th Cir. 2005) ("*Pellicano I*"); *see United States v. Leon*, 468 U.S. 897 (1984). *Pellicano I* was correctly decided, and we reach the same conclusion here. Because Christensen and Pellicano's challenges to the November 2002 warrant fail on the merits, we do not reach the threshold issues of standing or issue preclusion.

## II.     Denial of *Franks* Hearing

Christensen and Pellicano argue that they were entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because they made a substantial preliminary showing that the agent who prepared the affidavit in support of the

5

November 2002 warrant knowingly made materially false statements or omissions. We reject this argument.

To get a hearing on whether a warrant is invalid under *Franks*, a defendant must make "a substantial preliminary showing" that the affiant knowingly or recklessly included a false statement in the warrant affidavit and that the allegedly false statement was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. A similar standard applies to omissions in a warrant affidavit. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). Knowing or reckless falsehoods or omissions are immaterial when the affidavit would still support probable cause after the purported falsehoods are removed and omissions included. *United States v. Garcia-Cruz*, 978 F.2d 537, 541 (9th Cir. 1992). Omitted information that is potentially relevant but not dispositive is not enough to require a *Franks* hearing. *See Franks*, 438 U.S. at 155-56; *Garcia-Cruz*, 978 F.2d at 541.

The purported misstatements and omissions were not material to probable cause. *See United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir. 1985). The key material fact in the affidavit was that Pellicano hired Proctor to vandalize Busch's car to discourage her from publishing news articles. This core fact established probable cause that Pellicano committed a Hobbs Act violation and that evidence of such violation could be found at his PIA offices. *See United States v. McFall*,

6

558 F.3d 951, 956 (explaining that "[t]he Hobbs Act defines extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . .'") (quoting 18 U.S.C. § 1951(b)(2)). Numerous details in the affidavit supported this theory of probable cause, such as Proctor's statements in multiple recorded conversations that Pellicano had hired him to vandalize Busch's car.

As the district court found, the erroneous or omitted details in the affidavit were "of little consequence." None of the omitted details about which Christensen and Pellicano complain would have defeated probable cause. For example, it was not material that Ornellas failed to mention that the purported "bullet hole" in the windshield was not caused by a gunshot. A Hobbs Act violation does not require the use of firearms. Any "wrongful use of actual or threatened force, violence, or fear" is sufficient. 18 U.S.C. § 1951(b)(2). Pointing out that Proctor exaggerated the cause of the hole in the windshield would not so significantly undermine his credibility as to defeat probable cause, especially because Proctor admitted that he had vandalized Busch's car at Pellicano's behest. *See United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (explaining that in determining probable cause, an informant's admission against penal interest demonstrates reliability). The other misstatements and omissions Christensen and Pellicano point

7

to were likewise immaterial. The district court properly denied their *Franks* motion.

## III. Specificity of July 2003 Warrant

Christensen and Pellicano argue that the July 2003 warrant pursuant to which their recorded conversations discussing the Bonder wiretap were seized was insufficiently specific and the recordings thus should have been suppressed.

Christensen and Pellicano primarily argue that Part B of the warrant was insufficiently specific because it permitted the seizure of "[a]ll audio recordings of telephonic conversations." We disagree. Although warrants must be specific, they are read in a common sense fashion. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 855–56 (9th Cir. 1991). A common sense reading of the warrant applied to Part B the many limitations stated in Part A and the preamble to both Parts A and B. Read as a whole, therefore, the warrant was adequately specific. *See United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982) (explaining that a search warrant may include a class of generic items "if there are objective, articulated standards for the executing officers to distinguish between property legally possessed and that which is not"). A long list of specific items to be seized did not amount to a general warrant, especially in a case like this. As the Supreme Court has explained, "[t]he complexity of an illegal scheme may not be

8

used as a shield to avoid detection when the [government] has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Andresen v. Maryland*, 427 U.S. 463, 480 n.10 (1976).

## IV. Title III Challenge to Admission of Recordings in Second Trial

Christensen argues that 18 U.S.C. § 2515 requires the Pellicano-Christensen recordings to be suppressed because Pellicano made them for a criminal or tortious purpose. 18 U.S.C. § 2511(2)(d). This court has previously rejected the contention that Pellicano's remarks during the first trial's closing arguments established by a preponderance of the evidence that Pellicano made the recordings for the purpose of committing any criminal or tortious act. *United States v. McTiernan*, 695 F.3d 882, 888–89 (9th Cir. 2012). We reject Christensen's identical argument here.

We are not persuaded by Christensen's additional arguments that Pellicano made the recordings for the purpose of committing a criminal or tortious act. First, Christensen made no specific showing in the district court that Pellicano's recordings were essential to collecting illegal RICO income or that this was Pellicano's intended use. Moreover, even if the first recording was excluded on this fee collection theory, the remaining recordings would not have been excluded because Pellicano and Christensen did not discuss fees on them. Any error on this

issue was therefore harmless. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005).

Second, the recordings themselves were not essential to any breach of fiduciary duties that Pellicano may have committed. That the recordings evidenced Pellicano and Christensen's crimes and torts did not mean they were essential to actually committing those crimes and torts. *See McTiernan*, 695 F.3d at 889.

Finally, the district court did not abuse its discretion by denying Christensen's request for an evidentiary hearing on the purpose of the recordings after reviewing his offer of proof and determining that it was inadequate. Even if Christensen had proved his factual theories (e.g., fee collection and double dealing), he would not have been entitled to suppression. *See id.* at 891.

## V.     Pellicano's Motion to Dismiss Indictment

Pellicano argues that the indictment against him should have been dismissed because the government engaged in outrageous conduct. The standards to dismiss either for a due process violation or under the district court's supervisory powers are high and permit dismissal only in extreme cases. *United States v. Nobari*, 574 F.3d 1065, 1081 (9th Cir. 2009); *United States v. Doe*, 125 F.3d 1249, 1257 (9th Cir. 1997). None of the conduct Pellicano discusses in his papers comes close to either standard for dismissing an indictment. Even if the government steered

10

Pellicano's former girlfriend to gather defense information, such conduct could at most establish a *Massiah* violation, the remedy for which is suppression, not dismissal of the indictment.[1] *See Massiah v. United States*, 377 U.S. 201 (1964); *see also United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991) ("Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available."). Such alleged conduct was not so egregious or flagrant as to warrant dismissal of the indictment.

The allegation that Ornellas had once asked Arneson to obtain LAPD database information about a neighbor, even if true, was an irrelevant detail that does not approach the high standards for dismissing an indictment. The alleged *Brady* violations were also not serious enough. Finally, Pellicano's allegations that the prosecution was "vindictive" and engaged in "bullying tactics" were not sufficient. Individually and cumulatively, the alleged conduct was not sufficient to meet the high standards for dismissal. The district court did not err in denying

---

[1] Pellicano withdrew his motion to suppress on this ground, and the district court never held an evidentiary hearing on the matter. Having apparently waived this issue, Pellicano does not now separately argue a basis to reverse under *Massiah*.

Pellicano's motion to dismiss the indictment, nor did it abuse its discretion by declining to exercise its supervisory powers to do so.

## VI.    "Means of Identification" in Identity Theft Statute

Turner's argument that "means of identification" does not include landline telephone numbers contradicts the plain meaning of the identity theft statute. A telephone number is (1) a number, 18 U.S.C. § 1028(d)(7); and (2) "telecommunication identifying information," *id.*, which the statute defines as a "number . . . that identifies a specific telecommunications . . . account," § 1029(e)(11) . The names and telephone numbers Turner used constituted "*name[s] or number[s] that may be used, alone or in conjunction with any other information, to identify a specific individual.*" § 1028(d)(7) (emphasis added); *see also United States v. Alexander*, 725 F.3d 1117, 1119–20 (9th Cir. 2013). Because the plain meaning is clear, the analysis ends there. *See United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011); *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011).

The identity theft statute's mens rea requires only "the intent to commit, or to aid or abet . . . any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." 18 U.S.C. § 1028(a)(7). Turner's argument that he did not use the victims' names and

12

numbers for the purpose of stealing or misusing a person's identity is beside the point.

Finally, Turner did not raise below the argument that if "means of identification" includes landline telephone numbers, the identity theft statute is unconstitutionally vague. This argument therefore fails under the plain error standard of review. The statute was not clearly or obviously vague, such that the district court should have resolved the issue *sua sponte*. *United States v. Marcus*, 560 U.S. 258, 262–63 (2010).

## VII.  Motion to Sever Pellicano from the First Trial

The district court did not abuse its discretion in declining to sever Pellicano from the other Defendants in the first trial. Defendants have failed to establish that the joint trial with Pellicano was "manifestly prejudicial." *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993) (internal quotation marks omitted), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). As the district court explained, "any prejudice suffered . . . [was] similar to any multi-defendant case where a somewhat inartful attorney represents one of the defendants." The court also observed that "Pellicano conducted himself in a consistently responsible and professional manner during the trial and other proceedings."

The evidence the Defendants rely on failed to establish manifest prejudice. The district court struck testimony about Pellicano's offer to murder someone, for example. As another example, the Defendants fail to explain how the airing of personal drama between Pellicano and Virtue prejudiced them. To the extent that it did, it was not "so manifestly prejudicial," especially in a case of this size, that severance was required. Moreover, the district judge gave many cautionary instructions to ensure that Pellicano's self representation would not unduly prejudice his co-defendants. Finally, the jury's verdict acquitting some Defendants on some counts demonstrated that the jurors were able to compartmentalize the evidence as to each Defendant and count. *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000).

## VIII. Timeliness of Bribery Predicate Acts Against Arneson

The predicate acts of bribery alleged in the Fifth Superseding Indictment against Arneson were timely. The conspiracy to commit bribery count in the Fourth Superseding Indictment and the RICO predicate acts of bribery alleged in the Fifth Superseding Indictment were based on the same underlying conduct. The Fifth Superseding Indictment was obtained about a month after the Fourth Superseding Indictment's conspiracy to commit bribery count was dismissed. The Fifth Superseding Indictment was therefore timely pursuant to the statutory six-

14

month savings period. *See* 18 U.S.C. §§ 3288–89; *United States v. Clawson*, 104 F.3d 250, 251 (9th Cir. 1996); *United States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976). The district court did not err in so holding.

## IX.   Honest Services Fraud Good Faith Instruction

The district court did not abuse its discretion in declining to use Arneson's proposed good faith instruction for honest services fraud. The district court adequately instructed the jury about the intent element of the crime. Arneson therefore was not entitled to a good faith instruction. *United States v. Shipsey*, 363 F.3d 962, 967–68 (9th Cir. 2004). *Skilling v. United States*, 561 U.S. 358, 403–04 (2010), does not change the analysis because it did not change the intent element of honest services fraud.

## X.   Constructive Amendment and Variance

Defendants argue that the instructions in the first trial allowed the jury to convict for an enterprise other than the one specifically alleged in the indictment, thereby broadening the charges and requiring reversal. We disagree and affirm the district court's rulings on these issues.

The Fifth Amendment requires that a defendant be convicted "only on charges made by a grand jury in its indictment." *United States v. Garcia-Paz*, 282 F.3d 1212, 1215 (9th Cir. 2002). "An amendment of the indictment occurs when

15

the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002) (citation and internal quotation marks omitted). "A variance, on the other hand, 'occurs when . . . the evidence offered at trial proves facts materially different from those alleged in the indictment.'" *Id.* at 614–15 (citation omitted).

Neither an amendment nor a variance occurred here because the instructions permitted conviction for a "*substantially similar*" enterprise as charged in the indictment. An amendment or variance occurs "when the prosecutor proves, or the court instructs the jury to convict on, *materially different facts or substantially different crimes* than those charged in the indictment." *United States v. Driggers*, 559 F.3d 1021, 1025 (9th Cir. 2009) (emphasis added). Moreover, the facts charged in the indictment were the same as those proved at trial: Pellicano organized and led an enterprise to make money by illegally investigating targets. The enterprise involved wiretapping, bribing Arneson for access to confidential police databases, and paying Turner for access to confidential telephone company information. The jury returned verdicts on these allegations, as the special verdict form reflected. The instructions did not render it "impossible to know whether the grand jury would have indicted for the crime actually proved," nor did the

16

indictment "affirmatively misle[ad] the defendant[s] and obstruct[ their] defense at trial." *Adamson*, 291 F.3d at 615–16 (internal quotation marks omitted).

Any error was harmless, in any event. The jury specifically found that the enterprise included Pellicano, Arneson, Turner, and PIA. The result thus would have been the same had the instructions explicitly required such a finding. *See Driggers*, 559 F.3d at 1024-26 (rejecting constructive amendment argument and finding error in jury instructions harmless); *see also United States v. Garcia-Rivera*, 353 F.3d 788, 792 (9th Cir. 2003) ("In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." (internal quotation marks omitted)).[2]

## XI. Prejudicial Evidence

### A. Joint Claims

Defendants in the first trial appeal the district court's admission of evidence suggesting that PIA's actions led to wrongful acquittals in prior court cases involving PIA clients and that Pellicano and his associates were willing to perform

---

[2] We also reject Defendants' argument that the government's general statement in closing arguments about the enterprise's common purpose gave rise to a fatal variance. Defendants did not object to this statement at trial, and the statement did not give rise to a clear or obvious prejudicial variance. *See United States v. Marcus*, 560 U.S. 258, 262–63 (2010) (explaining plain error standard of review).

illegal or immoral acts beyond wiretapping and record searches, such as violence and threats, in order to achieve results for clients. Defendants dispute both the relevance of this evidence and its prejudicial impact. *See* Fed. R. Evid. 402 (irrelevant evidence is not admissible); 403 (court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice). We are not persuaded.

The Ninth Circuit reviews for abuse of discretion a trial court's decision that the probative value of evidence exceeds its potential for unfair prejudice. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). "The district court has broad discretion to admit potentially prejudicial evidence under Rule 403." *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011). While it is true that even modestly prejudicial evidence must be excluded where the evidence is of low probative value, the district court did not abuse its discretion in admitting the evidence at issue here because it was arguably relevant to the enterprise element of the racketeering charge. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (holding that moderately prejudicial evidence should not be admitted when it "does not go to an element of the charge")*; United States v. Turkette*, 452 U.S. 576, 583 (1981) (existence of a racketeering enterprise "is proved by evidence of an ongoing organization, formal or informal, and by

evidence that the various associates function as a continuing unit").[3] In the instances where evidence truly had no relevance to charges against a particular defendant, the court issued limiting instructions.

B.    *Nicherie*

Nicherie contends that testimony concerning various bad acts, including forging signatures and transferring properties in violation of court orders, violated Rules 403 and 404. Where, as here, no objection was made during trial, we review for plain error. *United States v. Sine*, 493 F.3d 1021, 1038 (9th Cir. 2007). The evidence Nicherie disputes was not offered to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1) (prohibited uses), but rather to show that Nicherie had a plan to obtain control of Shafrir's business under Rule 404(b)(2) (permitted uses)—a plan in which wiretapping was just one of the paths to accomplishing the goal. Furthermore, "it is the rare exception when a district court's decision to admit evidence under Rule 403 constitutes plain error." *Rizk*,

---

[3] Defendants cite *Curtin* for the proposition that "trial courts should exclude marginally relevant but extremely prejudicial evidence." 489 F.3d at 963–64 (Kleinfeld, J., concurring). In *Curtin*, this Court held that the trial court's failure to review proffered evidence in its entirety prior to admission was reversible error because the evidence admitted had a "rare power to disgust," "enough to sour the stomach." *Id.* at 956–58 (Trott, J., majority), 964 (Kleinfeld, J., concurring (internal quotation marks omitted)). The evidence in this case was not so extreme.

660 F.3d at 1132 (quoting *United States v. Plunk*, 153 F.3d 1011, 1019 n.7 (9th Cir. 1998) (overruled on other grounds)). This is not one of those exceptions.

Nicherie also appeals the court's admission of evidence that he coached Shafrir's daughter to accuse her father of sexual molestation. This Court reviews a district court's decision to admit evidence of prior bad acts for abuse of discretion. *See United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir 2010). Admitting Shafrir's testimony was not an abuse of discretion because it re-established witness credibility.

## C.    *Pellicano*

Pellicano appeals the introduction into evidence of a photograph taken during the search of his office depicting reading material that could be considered damning. Because Pellicano did not object at the time the evidence was presented, review is for plain error. *Sine*, 493 F.3d at 1038. Even though "attempts to use [reading material] against a defendant must be viewed and reviewed with a careful and skeptical eye," *United States v. Waters*, 627 F.3d 345, 355 (9th Cir. 2010), in this case the reading material was mentioned only in passing, and the Government did not invite the jury to draw any particular inferences from it. Admission of this photo was not plain error.

Pellicano also appeals based on the introduction of testimony that he offered to have someone killed on behalf of a client, testimony that was later stricken from the record. The court reminded jurors before deliberation that "testimony that has been excluded or stricken . . . is not evidence and must not be considered." We must assume that the jurors did not consider that evidence in reaching a verdict. *United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001) ("[J]uries are presumed to follow their instructions." (citing *Zafiro v. United States*, 506 U.S. 534, 540 (1993))).

As above, we affirm the admission of other potentially prejudicial evidence arguably relevant to the racketeering enterprise.

## XII. *Jencks* Material

During the first trial, Arneson called retired FBI Agent Stanley Ornellas to the stand. Arneson's co-defendants subsequently moved for production of Ornellas's Form 302 statements and grand jury testimony pursuant to Federal Rule of Criminal Procedure 26.2. The district court denied the motion. Only Pellicano appeals this decision.

We review the district court's denial of a *Jencks* request for abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004). "A conviction will be affirmed if the *Jencks* error is more than likely harmless."

*United States v. Brumel-Alvarez*, 991 F.2d 1452, 1457 (9th Cir. 1992) (citation and internal quotation marks omitted).

We do not need to decide whether the district court abused its discretion in failing to order production of *Jencks* material relating to Ornellas's testimony because any potential error was more than likely harmless. Even if Pellicano could have used Ornellas's prior statements to impeach his testimony, the other evidence against Pellicano was so substantial that it is highly unlikely the verdict would have been different.

## XIII. Pellicano's Rule 404(b) Notice Claim

Pellicano appeals the introduction of certain evidence because he was denied notice of the prosecution's intent to offer it. *See* Fed. R. Evid. 404(b)(2)(A) (prosecutor must provide notice of intent to introduce other bad acts evidence). Even assuming that Pellicano properly objected to the lack of notice, this claim fails because the error was harmless: a lack of notice prior to voir dire was unlikely to have affected the verdict. *See United States v. Pang*, 362 F.3d 1187, 1192 (9th

Cir. 2004) (evidentiary rulings will be reversed for abuse of discretion only if such error more likely than not affected the verdict).

## XIV.  Arneson's Prosecutorial Misconduct Claims

Arneson claims that he was prejudiced by various instances of alleged prosecutorial misconduct. He has failed to show a probability that the misconduct, if there was any, materially affected the verdict, and for this reason we affirm his conviction. *See United States v. Keyser*, 704 F.3d 631, 643 (9th Cir. 2012) (to obtain relief, a defendant must show that it is "more probable than not that the misconduct materially affected the verdict" (citation and internal quotation marks omitted)).

Arneson argues that the direct examination of Detective Lim constituted prosecutorial misconduct in violation of his Fifth Amendment rights because it implied that Arneson's retirement was an attempt to avoid an Internal Affairs Department ("IAD") interview he knew would uncover impropriety. *See Garrity v. New Jersey*, 385 U.S. 493, 497–98 (1967) (extending the privilege against self-incrimination to public employees in administrative hearings); *Griffin v. California*, 380 U.S. 609, 615 (1965) (forbidding prosecutors from commenting on a defendant's decision not to testify). If there was error, it was harmless because

Arneson admitted in his opening statement to the very acts that he would have been asked about at the IAD interview.

According to Arneson, the Government also violated his Fifth Amendment rights by using a compelled statement against him in cross-examination questioning about another IAD investigation. Arneson moved for a mistrial, which the court denied. Where there are allegations of prosecutorial misconduct, we review the denial of a motion for a new trial for abuse of discretion. *United States v. Washington*, 462 F.3d 1124, 1135 (9th Cir. 2006).

The court held an evidentiary hearing on the *Garrity* and Rule 16 issues implicated by the cross-examination questioning. Fed. R. Crim. P. 16(a)(1)(B)(i) (prosecution must disclose written or recorded statements in its possession made by defendant, provided the attorney knows—or through diligence could know—of its existence). Ultimately it found the prosecutor had "no actual knowledge that the Government was in possession of a compelled statement," and further that "nothing in the statement itself was used" in cross examination. Rather, the prosecution deduced the contents of the IAD recordings from the very existence of the investigation and Arneson's own testimony. This factual finding was not clearly erroneous, and therefore the decision not to grant a new trial was not an

abuse of discretion. Furthermore, any Rule 16 violation was harmless because the IAD investigation was common knowledge.

The prosecution's sustained questioning into Arneson's alleged bankruptcy filing did not constitute prosecutorial misconduct. The Government had a good faith basis for the questioning. It had no reason to doubt the validity of the filing.[4] Once Arneson testified on direct examination that he had never filed for bankruptcy, the petition became a proper subject for impeachment questioning. There was no Rule 16 violation, because the Government was not required to produce statements intended only for impeachment. *See United States v. Gonzalez-Rincon*, 36 F.3d 859, 865 (9th Cir. 1994). To the extent the bankruptcy was arguably introduced as proof of a motive to accept bribes, Arneson cannot prove prejudice, as he had already testified regarding an attempted foreclosure on his residence. Furthermore, the prosecutor's comment on perjury, made to Arneson's counsel and overheard by several jurors, was harmless because the jury was already aware of the Government's position that Arneson had lied on the stand.

---

[4] Arneson argues that the Government should have compared the signature on the filing to the signature on other documents in the Government's possession. This argument is unconvincing, because unless someone has a reason to suspect forgery, there would be no reason to compare signatures closely.

## XV.  Alleged Prosecutorial Misconduct in Closing Argument at First Trial

Arneson and Pellicano assert that the Government engaged in improper conduct during closing arguments at the first trial. This claim lacks merit. In the context of a trial lasting many weeks and encompassing lengthy testimony from numerous witnesses, any error in the Government's closing arguments did not amount to a miscarriage of justice. *See United States v. Prantil*, 764 F.2d 548, 556 (9th Cir. 1985) (in order to reverse, it must be more probable than not that the improper remarks materially affected the verdict).

According to Arneson, the Government improperly maligned his defense counsel.  Upon consideration of the statements in full, we conclude that was not the case. The Government was referring to Arneson's testimony, not to his outside meetings with counsel. Nor did the Government improperly express personal opinions regarding Arneson's credibility. "Prosecutors can argue reasonable inferences based on the record, and have considerable leeway to strike hard blows based on the evidence and all reasonable inferences from the evidence. A prosecutor may express doubt about the veracity of a witness's testimony and may even go so far as to label a defendant's testimony a fabrication." *United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011) (alterations, citations, and internal quotation marks omitted).

Pellicano argues that the Government improperly encouraged the jury to consider conduct not charged in the indictment, and that it improperly bolstered its trial witnesses. Everything the prosecution referred to was either already known to the jury through evidence introduced at trial or could have been deduced from that evidence. The statements did not prejudice the defense.

## XVI. Juror Misconduct Claims

Defendants in the first trial appeal their convictions based on claims of juror bias and various instances of juror misconduct. We agree with the district court's conclusion that the assorted occurrences alleged were unlikely to have affected the verdict.

First, the district court found that the comment regarding Arneson's credibility was not prejudicial because it was only overheard in passing, and the jurors likely did not afford it much weight because it merely repeated arguments the prosecution already made in open court. The court's analysis convincingly revealed the harmlessness of the comment, thereby satisfying the *Mattox* rule. *See Mattox v. United States*, 146 U.S. 140, 150 (1892) (private communications between a juror and an attorney invalidate the verdict "unless their harmlessness is made to appear").

Second, the court found that Juror 51's white lie as to whether she heard the comment did not evidence bias because the innocuous explanation was more likely. This finding deserves deference. *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (the district court is in the best position to assess juror bias).

Third, the court found allegations of influence from outside sources to be insufficient, as there was no evidence that the jurors received any revelatory information, or that they discussed or considered the information for any length of time. This finding was proper under this circuit's five-factor test for whether juror misconduct affected the verdict. *See Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988).

Defendants also appeal the district court's denial of an evidentiary hearing on this issue. They rely on *Caliendo v. Warden of California Men's Colony* in arguing that a court must hold a hearing "where, as here, an extrinsic contact was possibly prejudicial but the trial judge neglected to hold the government to its heavy burden of proving that the contact was clearly not prejudicial." 365 F.3d 691, 698 (9th Cir. 2004). *Caliendo* is not applicable. In *Caliendo*, one of the critical prosecution witnesses interacted with multiple jurors for twenty minutes, a contact that the Court found "went beyond a mere inadvertent or accidental contact." *Id.* (internal quotation marks omitted). In contrast, a single comment

28

overheard in leaving the courtroom or a passing mention of a website report containing information the jurors can observe themselves in open court, does not persuade us that the decision not to hold an evidentiary hearing was reversible error.

## XVII. Christensen's Evidence Claims

Christensen argues that evidence pertaining to Pellicano's other wiretapping activities was not admissible against him under Rule 404(b), admitting it against him was unfairly prejudicial under Rule 403, and therefore the district court erred in refusing to issue limiting instructions. We disagree.

Although the evidence was not exempt from Rule 404(b) analysis as "inextricably intertwined" with the charges against Christensen,[5] it was exempt as a rebuttal of Christensen's defense. *See United States v. Kearns*, 61 F.3d 1422, 1427

---

[5] There was no indication that Christensen knew about the other wiretaps, let alone participated in them. *Cf. United States v. Soliman*, 813 F.3d 277, 279 (9th Cir. 1987) (treating evidence as inextricably intertwined when "[t]he record suggests both that [the defendant] was indicted for less than all of his actions and that [his supervisor's] mail fraud activities were closely intertwined with [the defendant's]" (internal quotation marks omitted)). Nor was evidence of the other wiretaps necessary to offer a "coherent and comprehensible story," because the recordings of Pellicano and Christensen's conversations were understandable as referring to wiretapping activities even given the "coded language" used. *Cf. United States v. Williams*, 291 F.3d 1180, 1189–90 (9th Cir. 2002) (per curiam) (finding evidence of other assaults necessary to demonstrate coercion in the case at hand), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007) (en banc).

(9th Cir. 1995). Christensen opened the door to the admission of the evidence when he argued that Pellicano lacked the ability to wiretap during the relevant time and also that Pellicano altered the recordings to make it appear that they were discussing wiretapping when they were not. Evidence of the contemporaneous wiretaps was relevant to rebutting the first theory of defense, whereas evidence of the prior wiretaps—including testimony of PIA client Pfeiffer, who explained what the coded language meant—was relevant to rebutting the second theory.

Because the evidence in question was relevant to rebutting Christensen's defense, we affirm both the district court's finding that its probative value outweighed any danger of unfair prejudice under Rule 403 and the court's decision not to issue limiting instructions.

## XIX. Christensen's Severance Claim

Christensen contends that he should have been tried separately from Pellicano because a large amount of evidence would not have been admissible against him in a separate trial. We disagree. By presenting his various theories of defense to the jury, Christensen opened the door to evidence of Pellicano's other wiretapping acts. Christensen also argues that Pellicano's self-representation and prison garb were prejudicial to his defense. The court addressed both these issues in instructions to the jury. Absent a reason to believe otherwise, this Court

30

presumes that jurors follow instructions. *Rousseau*, 257 F.3d at 932. Christensen has failed to prove that prejudice from the joint trial was so "clear, manifest or undue" that he was denied a fair trial. *United States v. Throckmorton*, 87 F.3d 1069, 1071–72 (9th Cir. 1996); *see also United States v. Alvarez*, 358 F.3d 1194, 1206 (9th Cir. 2004) (defendant has burden of proving "clear, manifest, or undue prejudice" from joint trial).

## XX.  Alleged Prosecutorial Misconduct in Closing Argument at Second Trial

According to Christensen, comments made in closing argument at the second trial amounted to prosecutorial misconduct warranting a new trial. We disagree. Although the argument was likely improper, the error was harmless.

Even assuming the Government did not know the inference was false, it had a "very strong reason to doubt" the inference, and thus should not have argued it before the jury.  *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009). However, given that Christensen's falsified-recordings theory of innocence was tenuous at best, it is unlikely that the jury would have decided the case any differently notwithstanding the false inference.

## XXI.  *Brady* Claims

Turner, Arneson, and Pellicano appeal their convictions in the first trial, and Pellicano and Christensen appeal their convictions in the second trial, based on the

prosecution's failure to provide impeachment information regarding cooperating witness Teresa Wright. Pellicano also appeals based on the prosecution's failure to produce grand jury testimony pertaining to the hole in Anita Busch's car.

To prevail on a *Brady* claim, a "defendant must show that (1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment." *United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001). Appellants have failed to show that the information was material.

Wright's prior inconsistent statement had impeachment value, and thus it should have been produced before trial.[6] However, the evidence was not material to Defendants' guilt. There was not "a reasonable probability that the result of the proceeding would have been different had [the presentence report about Wright] been disclosed to the defense." *Id*.

Defendants argue that without Wright's testimony, the Government would not have been able to prove that Pellicano had the ability to implement wiretaps after Turner's retirement, that Turner committed any of the crimes for which he

---

[6] In contrast, the impeachment value of Wright's employment with Verizon was slim to none. The fact that the court expressed surprise and dismay upon learning this information at sentencing was not because it should have been disclosed to Defendants, but rather because Wright should not have been allowed to work at Verizon while awaiting sentencing.

was charged, or that there was a RICO enterprise. This argument is not persuasive. At most, Defendants could have used the inconsistent statement to establish that Wright told a minor lie about receiving payment for specific acts as opposed to receiving money for her general willingness to act on Turner's behalf. This would not have discredited her testimony to the point of affecting the verdict. As the court correctly reasoned in denying the motion for a new trial, "[e]ven if the jury were to question Wright's veracity, there was a large amount of supplemental evidence that would lead to the conclusion that Wright gave information to Turner who passed i[t] on to Pellicano."

Pellicano's arguments also fail. The first prong of the *Brady* inquiry was not met. It was not clear that the source of the hole has impeachment value, as the witness could have meant that he put what looked like a bullet hole in the car. Nor was the third prong met, as the information was not material to Pellicano's guilt or punishment: it did not matter what implement created the hole in Busch's windshield, merely that the hole was put there in order to intimidate her.

**AFFIRMED.**